RUNGE v. FRESHMAN et al. (No. 8175.)

(Court of Civil Appeals of Texas. Dallas. Nov. 8, 1919.)

1. HUSBAND AND WIFE ☜29(7)—DEEDS TO FUTURE WIFE NOT "MATRIMONIAL AGREEMENTS" REQUIRING ATTESTING WITNESSES.

Rev. St. 1911, art. 4618, providing that every "matrimonial agreement" must be acknowledged before some officer and attested by at least two witnesses, *held* not to govern deeds executed before marriage by a husband to his future wife to settle on her a portion of the property of which he was absolutely possessed, in consideration of her marrying, the property to be her separate estate for life, to revert to him if she died without issue, but if she had issue to go to her heirs.

2. HUSBAND AND WIFE ☜29(9)—VALIDITY OF ANTENUPTIAL SETTLEMENT BY DEEDS.

Deeds executed before marriage by a husband to his future wife, granting her the property for life, to revert to him if she died without issue, but if she had issue to go to her heirs, *held* not prohibited by Rev. St. 1911, art. 4617, as a stipulation between parties about to marry, altering the legal order of descent and distribution as contemplated by the Legislature.

3. DEEDS ☜128 — ALTERNATIVE GRANT ON CONTINGENCY VALID.

Despite the rule in Shelley's Case, a deed with the provision that, if the grantee dies first, title shall pass to another, is valid.

4. DESCENT AND DISTRIBUTION ☜68—LAWS OF DESCENT AFFECT PROPERTY OWNED AT DEATH ONLY.

The laws of descent and distribution govern only what the person owns at his death, and cannot touch what he has disposed of during his life, so that a person has heirs only as to property which he holds at his death, and not as conveyed away during his lifetime.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Suit by Julius Runge, trustee in bankruptcy, against Sam Freshman and another. From judgment for defendants, plaintiff appeals. Affirmed.

Brooks, Worsham & Graham, and Allen Charlton, all of Dallas, for appellant.

Synnott & Duggan, of Dallas, for appellees.

RAINEY, C. J. Appellant, as trustee in bankruptcy of Samuel Freshman, bankrupt, sued appellees in trespass to try title to recover certain lots of land herein described in the city of Dallas, alleging that Benjamin Moses Freshman, a minor, was claiming some interest in the said property and that Samuel Freshman was the common source of title.

Defendant pleaded a general demurrer and general denial and specially answering in substitute that prior to June 15, 1906, Samuel Freshman was a widower; that he was solvent; that in contempl▇▇▇ of marriage with Miss Minnie Frank▇▇▇ deeded her before marriage the two▇▇▇▇ of property sued for; that the ma▇▇▇▇ was consummated a few days after the execution of the deeds; that the minor defendant, Benjamin Moses Freshman, was born of said wedlock, and that in 1910 Mrs. Freshman, the mother of said minor, died; that Samuel Freshman was appointed guardian of the estate of said minor and inventoried the property in controversy here in the probate court as the property of said minor. He further pleaded the three and ten year statutes of limitation.

A trial resulted in a judgment for appellees, from which this appeal is taken.

### Conclusions of Fact.

The following facts were agreed to by the parties upon the trial of the case:

(1) That in cause No. 1211, in bankruptcy, in the matter of Samuel Freshman, bankrupt, in the District Court of the United States for the Northern District of Texas, at Dallas, Tex., the said Samuel Freshman was adjudged a bankrupt on the 2d day of November, 1915, and that the plaintiff, Julius Runge, after being duly appointed, qualified as trustee of said Freshman's estate, and his bond was approved by the referee in bankruptcy on November 26, 1915, and that on April 16, 1917, the date on which this suit was filed,

---

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and on February 7, 1918, the date on which this case was tried, said bankruptcy proceedings were still pending in said court, and that at all of said times the plaintiff, Julius Runge, was and had been the duly appointed, qualified, and acting trustee in bankruptcy of said estate.

(2) That prior to the 15th day of June, 1906, Samuel Freshman was a widower, having one child, to wit, a daughter, by a former marriage, and that prior to said June 15, 1906, he sought in marriage one Minnie Franklin.

(3) That the said Minnie Franklin was without separate estate, and that the said Samuel Freshman owned, as his own separate estate, property, including that described in plaintiff's petition herein, of the aggregate value of, to wit, $50,000.

(4) That before the said Minnie Franklin would consent to the marriage, she required that the said Samuel Freshman convey to her certain property, to be hers during her lifetime, among which property was that described in plaintiff's petition herein.

(5) That pursuant to such agreement between the said Samuel Freshman and the said Minnie Franklin the said Samuel Freshman executed to the said Minnie Franklin the two deeds introduced in evidence on the trial of this cause by the defendants, and which are hereinafter set out.

(6) That at the time said deeds were made by said Samuel Freshman to said Minnie Franklin the said Samuel Freshman was then and for many years thereafter a man of ample means, and was worth over and above all debts and exemptions, and had property in his own name, over and above such debts and exemptions, worth an amount in excess of $40,000 and was indebted to no one which he was unable to pay promptly, and was not then indebted to any one in any amount which was not thereafter paid in full.

(7) That in addition to the consideration recited in said deeds the said Minnie Franklin assumed to pay and did actually pay off as much as $1,000 indebtedness, which was against the lands at the time Freshman deeded them to her.

(8) That Samuel Freshman and Minnie Franklin were duly and legally married on June 20, 1906, and lived together as husband and wife until on or about December 1, 1910, at which time she died, leaving, surviving her, her husband, Samuel Freshman, and her minor son by Samuel Freshman, whose name was and is Benjamin Moses Freshman, who was born on the 19th day of February, 1908; that at the date of the death of said Mrs. Minnie Freshman she left no other children surviving her; and that she died intestate.

(9) That Samuel Freshman thereafter made application to the county court of Dallas county, Tex., to be appointed guardian of the estate of said Benjamin Moses Freshman, and such application was granted, and thereafter the said Samuel Freshman duly qualified as such guardian, and is now, and has been at all the times since the filing of this suit, the duly appointed, qualified, and acting guardian of said minor's estate; that he returned into court an inventory, appraisement, and list of claims as required by law, in which he listed said property of said minor.

(10) That at the time plaintiff was appointed and qualified as trustee of the estate of Samuel Freshman, bankrupt, the said Samuel Freshman did not owe any one whom he owed at the time he conveyed the property described in plaintiff's petition to Minnie Franklin; that up to the latter part of 1914 the said Sam Freshman had been and was amply solvent, and that the beginning of his insolvency dated from the year 1915, and that all the creditors he was indebted to at the time of said bankruptcy, and all the creditors represented by the plaintiff as trustee, are creditors whose claims dated from said year 1915, and the latter part of the year 1914, and that he did not then owe, and did not owe at the time of the filing of his amended answer herein on May 14, 1917, any person, firm, or corporation whose indebtedness dates back to a time antecedent to the year 1914.

Samuel Freshman executed the following deed:

"Know all men by these presents that I, Samuel Freshman, of the county of Dallas, state of Texas, * * * of the sum of one dollar to me in hand paid and of my love and affection for Minnie Franklin, my future wife, of the state and county aforesaid, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said Minnie Franklin, my future wife, of the county of Dallas, state of Texas, all that certain lot, tract or parcel of land described as follows: [Description omitted]"—and containing the usual habendum and general warranty clause. "Witness my hand at Dallas, Texas, this 15th day of June, A. D. 1906. Sam Freshman."

On the same date a deed to a different tract was executed, containing the following condition:

"That in the event of the death of the grantee herein before the death of the grantor, title to the property herein conveyed shall revert to the grantor, unless there shall be then living a child or children, offspring of grantor and grantee, in which event it shall descend in fee simple to such offspring."

The execution of neither deed was witnessed, but both were duly signed by Sam Freshman and were acknowledged by him and recorded. "That at the time defendant offered to introduce said deed in evidence plaintiff objected to the introduction of the same, because said deed, having been made in contemplation of marriage, and when the parties thereto were intending to enter into the marriage state, and not having been at-

tested by two witnesses, was incompetent, irrelevant, and immaterial as evidence in this case, and was not admissible to show a divestiture of title out of the said Sam Freshman." Said deeds were admitted in evidence by the court, and the appellant duly excepted.

Appellant's first and second assignments of error will be considered together. Both assignments complain of the admission in evidence of both deeds, and make complaint under propositions:

(1) Proposition under first assignment of error is:

"Where a deed is made in contemplation of marriage, and when the parties thereto were intending to enter into the marriage state, and such deed has not been attested by two witnesses, such deed is incompetent and inadmissible as evidence to show a divestiture of title out of the grantor."

(2) The proposition under the second assignment of error is:

"Where a deed is made in contemplation of marriage, and when the parties thereto were intending to enter into the marriage state, and such deed has not been attested by two witnesses, such deed is incompetent and inadmissible as evidence to show a divestiture of title out of the grantor."

[1] It is further contended that said instruments are "matrimonial agreements," within the meaning of article 4618, R. S., and are incompetent, immaterial, irrelevant, and inadmissible. While as a rule deeds of conveyance are in fact considered to be agreements, we are inclined to the belief that the Legislature, in passing article 4618, never intended deeds made as this was should not be included in the term "matrimonial agreement." Sam Freshman executed these deeds evidently with the intention of settling upon Minnie Franklin a portion of his property of which he was absolutely possessed in consideration of her marrying him, which was a valuable consideration, the property to be her separate estate during her life, and to revert to him in the event of her death without issue, but in the event of issue to go to her heirs. The statute allows settlements of this kind to be made. Minnie Franklin not only accepted the property, but accepted it, possessed it, and lived on it, enjoying it as her separate property until her death, and after she died Sam Freshman was appointed guardian of their child and managed it for him, never claiming any further interest for himself. Nor was any interest in others asserted, except appellant is suing as referee in bankruptcy, and is trying to gain possession for the payment of debts contracted long after said deeds had been made. In McLeod v. Board, 30 Tex. 239, 94 Am. Dec. 301, a case where a marriage settlement was made, it was held that when a marriage settlement excludes the husband from participating in

the estate he is forever excluded. Sam Freshman, after his wife's death, ratified by his acts what he did by the deeds, by acting as his son's guardian, and the statute of limitations had run for a sufficient time to bar the claim of creditors.

[2-4] The deeds made by Samuel Freshman were executed before he and Minnie Franklin were married, and at a time when Freshman's daughter by a former marriage had no interest in his property, and when under the law he had the right to dispose of it as he deemed proper, not inconsistent with the law of the land. We are of the opinion that said deeds do not change the order of descent and distribution as contemplated by the Legislature, and the remarks of appellee's counsel are apropos on this question; therefore we adopt them as part of this opinion:

"There has been no rule of forced heirship in Texas since any of the transactions of this case had their inception. Therefore there has been no inhibition against an ancestor disposing of his property during his lifetime by deed or will as he saw fit. Notwithstanding the rule in Shelley's Case, a deed with a provision that, if the grantee dies first, the title shall pass to another, is valid. And the deed takes immediate effect, and the legal title passes from the grantor at once, as well as the equitable estate and all other right. Now, the laws of descent and distribution govern only what the party may own at his death, and cannot touch what he has disposed of during his life. The rule and article of the statute insisted upon by appellants refer to marrying parties entering into an agreement whose effect may be to control the disposition of their estate owned by them when they die. The legal order of descent and distribution says that, when parties die, the property then owned by them shall pass in a certain way. Now, under our statute, the marrying parties cannot enter into any agreement general in its terms by which it is agreed that whatever property they die possessed of, or any fraction of it, shall descend a certain way. They would then be legislating. But that does not mean that they cannot convey each to the other, then or any other time during their lives, or divest themselves of every article of property then or at any other time vesting in them. Counsel speak of Freshman having a daughter by a former marriage. That daughter had no more interest in property then owned by Freshman than a stranger had. He could do as he pleased with it. Only when death overtook him while he owned property would any right of hers attach. And since the repeal of the forced heirship statute he could leave a will absolutely taking away any interest she might otherwise have had. So the legal order of descent and distribution could only attach to such property as remained Sam Freshman's at his death and undisposed of by will. Therefore that was the only property that could be affected by the statute referred to by appellants. Then what does the statute mean? Why, that these parties had no right to enter into a contract to the effect that, when either died, undisposed-of property, property then owned by the deceased, should descend in some other way than that outlined by the statutes of descent and distribution. It did not

mean that their free disposition of property during their lives should be hampered, or that it should affect property, the title to which passed by deed away from Freshman. Take every case that counsel cite, and the facts thereof show just what we are contending for. Counsel do not dare tell the facts of those cases, but must content themselves with quoting announcement of principles. But they all deal with contracts that seek to affect property that the deceased died without disposing of."

The case of Groesbeck v. Groesbeck, 78 Tex. 664, 14 S. W. 792, is cited by appellant in support of his right to recover. In that case the parties entered into a marriage contract by which the property of the intended wife was to remain in the hands of a trustee where it was at that time. The parties were married, and afterwards they entered into a postnuptial contract, which was sought to be annulled. By the last contract between them it was provided that—

"In case he died without issue of his marriage his property was to descend and be distributed among his heirs as if no marriage had ever taken place between him and his wife, so depriving her of his personal property and one-half of the real estate to which she would be entitled under the laws of this state; also revoking the antenuptial agreement."

The court held as follows:

"We think the court below, without regard to averments and proof of fraud and undue influence on the part of Mrs. P. H. Groesbeck, should have instructed the jury to find for the plaintiff on the ground that the agreement sought to be set aside was such an agreement as the husband and wife had no power to make. The agreement was intended to change the law of descent, and at the death of the husband deprive the wife of her distributive share of his property under the law. Husband and wife cannot alter the legal order of descent in respect to themselves or their children by contract made in contemplation of marriage, and by a much stronger reason they cannot do so by contract during marriage. Rev. Stats. art. 2847; Cox v. Miller, 54 Tex. 24. Without reference to the fact that there was an antenuptial agreement which the postnuptial agreement illegally pretended to revoke, this contract was such as could not be made between husband and wife and was void. This being the law of the case, no other supposed errors need be considered."

While in said case the court announces that "husband and wife cannot alter the legal order of descent in respect to themselves or their children by contract made in contemplation of marriage, and by a much stronger reason they cannot do so by contract during marriage," which is correct as far as marriage contracts are concerned, yet in said Groesbeck Case the court sustained the lower court's holding that the postnuptial contract was void, and in effect let the antenuptial contract stand. The opinion does not hold contrary to views we have ex-

pressed, and leaves this case without any decision of our courts supporting it directly in point.

"A court of equity," says Kent, "will always carry the intention of these settlements into effect, when that intention is explicit and certain." There can possibly be no contention that it was not the intention of the parties to the deed that the land should be that of Minnie Franklin. Therefore we hold that said judgment should be affirmed.

Affirmed.