### WILSON et al. v. HUMBLE OIL & REFINING CO. et al.

#### No. 4689.

Court of Civil Appeals of Texas. Texarkana.

April 18, 1935.

Rehearing Denied May 16, 1935.

Tom L. Beauchamp and Wm. Frank Bezoni, both of Tyler, for appellants.

R. E. Seagler, of Houston, Ramey, Calhoun & Marsh, of Tyler, Robt. F. Higgins, of Houston, J. M. Deavenport, of Gladewater, H. H. Wellborn, of Henderson, H. M. Wade, of Rockwall, Samuels, Foster, Brown & McGee, of Fort Worth, and Lee M. Sharrar, of Houston, for appellees.

HALL, Justice.

This is a suit brought by appellants against appellees to partition two tracts of land situated in Rusk county, Tex. Appellants were plaintiffs and appellees were defendants in the trial court, and for convenience will be designated as such in this court. This suit was originally brought in Smith county and was by proper order transferred to the district court of Rusk county, where it was tried.

Plaintiffs alleged that they and a portion of the defendants were the children and grandchildren of Fannie Wilson, and as such were entitled by inheritance to a certain undivided interest in two tracts of land owned by her at the time of her death; one containing 73.5 acres and the other containing 96.6 acres. Plaintiffs contend that by the terms of the deed from Mayfield the fee-simple title to the 73.5-acre tract vested in Fannie Wilson, and that on the date of the sale by Fannie Wilson of her undivided interest in the 96.6-acre tract she was an old woman eighty years of age, enfeebled in body and mind, and subject to undue influence of two of her children; that she did not have sufficient mental capacity to know she was giving her interest in said property to two of her children and part of her grandchildren; that she did not have sufficient mental capacity to collect the information in her mind and to hold the same for a sufficient length of

time to form a reasonable judgment relative to the business in which she was then engaged; that she was induced to sign the deed to her interest in the 96.6-acre tract by undue influence exercised by two of her children. Plaintiffs further alleged that the defendant Humble Oil & Refining Company has drilled a large number of producing oil wells on both of said tracts of land, and has produced and sold therefrom a large quantity of oil; and plaintiffs pray for an accounting, a receiver, and for partition of said land.

The defendants answered by general demurrer, special exceptions, general denial, and specially pleaded the three, four, five, ten, and twenty-five years' statutes of limitation. They also pleaded estoppel, innocent purchaser, improvements in good faith, and laches.

The deed to the 73.5 acres of land was dated November 9, 1901, and was from J. B. Mayfield to Fannie Wilson, and at her death to her children (4) Ann Wilson, Lee Wilson, Shadrick Wilson, and Emma Wilson. The deed to the 96.6 acres of land was dated January 21, 1905, and was from W. A. Mullikin and wife to Fannie, Mary, and Emma Wilson. Fannie Wilson died in 1923.

A trial was had before a jury, and at the conclusion of the plaintiffs' testimony the court, upon motion of defendants, granted a peremptory instruction in their favor; and from this action of the trial court the plaintiffs prosecute their appeal.

Plaintiffs bring forward two assignments of error. The first complains of the action of the trial court in holding that the deed conveying the 73.5-acre tract of land passed a life estate to Fannie Wilson, and at her death a fee-simple title to her four children named therein. The granting, habendum, and warranty clauses of this deed are as follows:

" * * * I do by these presents, grant, bargain, sell, release and convey unto the said Fannie Wilson and at her death to her children (four) Ann Wilson, Lee Wilson, Shadrick Wilson and Emma Wilson, grantees herein, * * *

"To Have And to Hold the above described property and premises together with all the rights, privileges, appurtenances and improvements to the same belonging to the said Grantees, their heirs, or assigns, forever, and I hereby bind myself, my heirs and legal representatives, to Warrant and Forever Defend, all and singular the title to said property unto them the said grantees, their heirs or assigns against the lawful claims of any and all persons whomsoever."

It is contended by plaintiffs that this deed by its terms vested in Fannie Wilson the fee-simple title to the tract of land described therein, and that at her death all her children would inherit equal portions thereof. This construction must be found, if at all, within the four corners of the deed itself. And the intent of the parties to said deed must be gleaned from the language used therein. In the case of Hancock v. Butler, 21 Tex. 804, at page 816, Judge Roberts, speaking for the court, says: "The rule, then, that Courts will confer the greatest estate on the grantee that the terms of the grant will permit, must necessarily be subordinate to the rule 'that every part of the deed should be harmonized and given effect to, if it can be done.'" It will be noted that the portions of the deed copied above use the word "grantees," evidencing a clear intention on the part of the grantor to confer on the children named in said deed some character of estate, and this designation as "grantees" in the two last clauses of the deed could refer to the four children only giving unto them a fee-simple title to the land on the happening of a certain contingency, to wit, the death of Fannie Wilson. Furthermore, the children named in the deed with the mother, Fannie Wilson, were the younger set, and with her constituted the family. As such family they lived on the tract of land and presumably from the fruits of their joint labor on same paid the purchase price thereof.

The case most nearly in point, and which, in our opinion, is decisive of this question, is Ogletree v. Abrams (Tex. Civ. App.) 44 S.W.(2d) 444, and affirmed by the Commission of Appeals in 67 S.W.(2d) 227, 228. In that case Hurley conveyed to Abrams and wife certain lots in the city of Fort Worth, Tex.; in the consideration clause, and nowhere else, the following language is used: "In case of death of grantees, the title and ownership is vested in Virsey Abrams, as to the 100 foot strip off the East side of lots conveyed herein, but the West portion is vested in said grantees." Judge Sellers

of this court commenting on the language copied says:

"It would seem from the provisions that the seller and purchaser in this deed had a statutory right to insert in the deed the very clause complained of, and it is believed that the place in the deed where the clause was inserted is of no importance, so long as the clear intention of the parties may be ascertained from the deed as a whole, since it has been held that no particular form is required to convey lands in Texas. Leal v. Leal (Tex. Civ. App.) 4 S.W.(2d) 985.

"It is our opinion that the grantor, W. R. Hurley, had a legal right to provide in the deed that on the death of grantees title to the 100-foot strip of land should vest in Virsey Abrams. Runge v. Freshman (Tex. Civ. App.) 216 S. W. 254. This was certainly the intention of the parties, and in so holding we give effect to all clauses in the deed, as it is our duty to do whenever possible. Benskin v. Barksdale (Tex. Com. App.) 246 S. W. 360."

The Commission of Appeals, in an opinion by Presiding Judge Harvey affirming the judgment of this court in the same case, says: "The well-established rule is that, in construing a deed, the paramount purpose is to ascertain the intention of the parties. For the purpose of ascertaining such intention, all the provisions contained in the instrument are to be taken into consideration, and all given effect where this can be done. 'Even where different parts of the instrument appear to be uncertain, ambiguous or contradictory, yet if possible, the court will harmonize the parts and construe the instrument in such a way that all parts may stand, and will never strike down any portion except there be an irreconcilable conflict wherein one part destroys in effect another part. The strictness of the ancient rule as to repugnancy in deeds is now much relaxed, and the saner method is applied of permitting all parts of the instrument to stand, where possible, and to gather the intention of the parties from the whole instrument.' 14 Tex. Jur. page 919, et seq., and cases there cited."

■ In our opinion, construing this deed as a whole as we must, it is clear that the parties thereto intended for Fannie Wilson to take a life estate and at her death the fee-simple title to the whole tract to vest in the four children named therein. This construction harmonizes all portions of said deed. Therefore this assignment is overruled.

■ The other assignment of error complains of the action of the trial court in peremptorily instructing the jury in favor of defendants on the question of the unsoundness of Fannie Wilson's mind on November 7, 1914, the date she conveyed her interest in said 96.6 acres of land to certain of her daughters and grandchildren.

Sol Dennis, Gus Johnson, Shadrick Wilson, and Cornelius Wilson were witnesses for the plaintiff who testified to the condition of Fannie Wilson's mind at or near the date she conveyed her interest in the 96.6 acres of land to her daughters and grandchildren. Sol Dennis said that as she grew older she became very religious; she would have shouting spells; she would start to the church and go home shouting just as far as one could hear her. This lasted for ten years until she died, and became worse in her last years. "As near as I can come at it, she just became more religious as she growed older, and whenever she would get to shouting she would, I will say, go to pieces, as far as my knowing her or seeing her do a thing like that. She had a tendency to walk and talk and I think she would have crying spells as she growed older. This talking and crying spells was different from what it had been in her life. It was a marked difference. I don't know just exactly what brought about the crying spells no more than I would say she was getting weaker and older." He further testified that she could not count money; that she would have crying and talking spells almost daily, but this condition began to be worse ten years before her death; that it was worse than when he first knew her; that she reached the point where she would have nothing to do with attending to the stock and things about the place, and her daughter Mary Ann did this for her; that her mind grew weaker as she grew older; that she could not understand as good as she did further back; and that she didn't know the difference between one-third and one-fifth interest in land. He further stated that he would not say she was insane, but did state that he believed she was of unsound mind. Further, on direct examination:

"A. I didn't say she was mindless or nothing like that; it grew weaker as she growed older.

"Q. I didn't ask you that; I am not asking you whether or not she was wholly mindless; but whether or not it had changed from before that time? A. I wouldn't say whether or not it had changed; it grew weaker as she growed older."

Gus Johnson, also a witness for the plaintiffs, testified that he had known Fannie Wilson since he was a small boy; that from about the year 1912 until the time of her death he noticed a difference in her physical and mental condition, but prior to this time her mind had not seemed so strong as when he first knew her; that she didn't talk connectedly as she did before; that she didn't remember as well as she had formerly. He testified, further, that she was extremely religious and emotional, more extreme than some others of the members of the church; shouted more than the other members; that she didn't know what was meant by one-third, or, didn't know the difference between one-third and one-fifth. Based upon this knowledge of Fannie Wilson, he testified that in his opinion she was of unsound mind. In cross-examination he stated that what he meant was that Fannie Wilson's mind wasn't as good as it was in the early days; that she was strictly religious.

Shadrick Wilson, a witness for plaintiffs, testified along the same line as the other two witnesses, Gus Johnson and Sol Dennis. Shadrick Wilson on cross-examination further testified that the first time he noticed any change in Fannie Wilson was four or five years before she died, which was some four or five years after she had conveyed the property.

Cornelius Wilson testified to Fannie Wilson's acts and conduct about the home, the management of the farm by her daughters, and her weakness on account of age. He ventured no opinion as to her mental condition.

It is strenuously insisted by the plaintiffs that this evidence was sufficient to require submission of the issues of fact on her mental soundness to the jury. The case we find that is nearest in point on this question is Crow v. Childress (Tex. Civ. App.) 169 S. W. 927, 932.

In that case Childress conveyed to Crow certain real estate situated in Hill county, Tex. On the death of Childress his heirs brought suit against Crow to set aside the deed on account of want of mental capacity in the said Childress, and the exercise of undue influence over him by the grantee in said deed. Some four or five witnesses testified for the plaintiff, after stating the facts upon which they based their opinion, that Childress at the time he executed the deed to Crow was of unsound mind. Numerous other witnesses testified for the defendant Crow that on the date of the deed from Childress to Crow, Childress was of sound mind. The trial court submitted the issue to the jury and the jury found in favor of the heirs of Childress; that is, that Childress was of unsound mind on the date he conveyed the property in controversy to Crow. The appellate court speaking through Judge Talbot states: "No witness who attacked by their testimony the mental capacity of John S. Childress seemed to be willing to declare that he was insane. They said that in their opinion he was of unsound mind at times; but they were not present at the time the deed was executed, and do not speak of his mental condition at that particular time. An analysis of their testimony discloses that their opinions were based very largely, if not almost wholly, upon the old age and bodily infirmities of the said Childress, from which they infer that at the very time the deed was executed he was of unsound mind. The rule, as we understand it, is that neither old age, sickness, nor distress in mind or body incapacitates, provided the testator or grantor has possession of his mental capacities, and understands the business in which he is engaged; that the test is integrity of the mind, and not the body." Judge Talbot then proceeds to reverse and remand the cause for another trial. The same parties had another trial, and the trial court peremptorily instructed the jury in favor of Crow, the grantee in said deed, and the heirs of Childress appealed. This time the case was heard by this court, opinion by Judge Levy. 185 S. W. 414, 415. Judge Levy states that the facts are the same as in the former case to the Dallas Court of Civil Appeals and that the trial court committed no error in giving the peremptory instruction. Judge Levy in affirming the judgment uses this language: "The evidence utterly failed to show, we think, that John S. Childress at the time of executing the deed was mentally incapacitated to execute a deed, or that un-

due influence was exercised upon him in the execution thereof." Citing cases.

It seems to us that the testimony bearing on the mental unsoundness of Childress in the cases last above cited is much stronger than that in the case now before this court. Yet the court in the case cited above says: "An analysis of their [witnesses'] testimony discloses that their opinions were based very largely, if not almost wholly, upon the old age and bodily infirmities of the said Childress, from which they infer that at the very time the deed was executed he was of unsound mind." 169 S. W. 927, 932. We think with equal force the same can be said of the testimony in this case. Fannie Wilson lived nearly ten years after the date on which she executed the deed to the property in controversy. The witnesses testified to the condition of her mind nineteen years before the trial.

We do not think the trial court committed error in peremptorily instructing the jury in behalf of the defendants. Therefore, the judgment of the trial court is affirmed.