**LEAL v. LEAL et al. (No. 7687.)**

(Court of Civil Appeals of Texas. San Antonio. Jan. 12, 1927. Rehearing Denied Feb. 16, 1927.)

1. **Husband and wife** ⬦274(4)—**Child of parents dying intestate may sue for accounting of community property converted by other heirs, where administration of parents' estates was not necessary (Rev. St. 1925, art. 3356).**

Where one of three children received community property of deceased parents, which he converted, discovery and accounting growing out of breach of trust could be required in suit in which three children were parties, where administration of parents' estates was unnecessary, and therefore not granted under Rev. St. 1925, art. 3356; it clearly appearing that parents died intestate and that three children were sole heirs.

*On Motion for Rehearing.*

2. **Husband and wife** ⬦274(4)—**Lack of necessity for administration of parents' estates held sufficiently alleged in petition of heir for accounting by statement that no administration had been had thereon (Rev. St. 1925, art. 3356).**

Petition of one of three heirs of deceased parents for accounting of community property, converted by other heirs, was not required to allege that administration of estates of parents, who died long before commencement of suit, was unnecessary, where petition contained allegation that estates had not been administered,

as, in absence of administration, it will be presumed probate court passed upon question under Rev. St. 1925, art. 3356, and found administration should not be granted because not necessary; it being fairly inferable from allegation of no administration that there was no necessity therefor.

3. **Executors and administrators** ⬦3(1)—**Heirs inherit without administration.**

Heirs inherit without necessity of an administration.

4. **Pleading** ⬦214(4)—**General demurrer admits facts alleged in pleading, and also facts reasonably inferable from facts alleged.**

General demurrer admits, for purpose of testing pleading, all facts which are alleged in pleading challenged, as well as all facts which may be reasonably inferred from facts alleged.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by E. R. Leal against Santos Leal, Jr., and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Wilson & Wilson and Drew Pruitt, all of San Antonio, for appellant.

Geo. G. Clifton, J. T. Sluder, and J. H. Ragsdale, all of San Antonio, for appellees.

COBBS, J. E. R. Leal, appellant, sued his brother, Santos Leal, Jr., and sister, Sarah Leal Del Valle, for a discovery and accounting against defendant Santos Leal, Jr., for the collection of rents, income, and revenues from the community estate inherited by appellant and appellees from their parents, and alleged to be owned by appellant and appellees as tenants in common and for the partition of said property.

Appellant alleges in his petition, and shows:

"That plaintiff and the two defendants, Santos Leal, Jr., and Sarah Del Valle, are the children and sole heirs of their father, Santos Leal, Sr., who died February 17, 1903, and Joaquina G. Leal, their mother, and that said heirs and their mother thereby became tenants in common of the Laredo street property in San Antonio, consisting of thirteen lots which was the community property of their said parents. That said property rented for $275 per month, and by an agreement between those interested said property was to be held intact by said Joaquina G. Leal and not partitioned until the death of the latter. That plaintiff, said defendant Santos Leal, Jr., and their mother lived upon, enjoyed, and used said property until same was sold in July, 1915.

"That during said time said defendant, Santos Leal, Jr., did manage said property and collect the rents and income from all of the said community property for those interested therein. That said defendant collected the rents from said Laredo street property from the year 1908 to 1916, amounting to about $29,700. That the living expenses of said family, consisting of plaintiff, said defendant, and their mother, and the taxes on said property amounted to about

$10,000 during said time, and were paid by said defendant out of said fiduciary funds in cash.

"That said property was duly sold in July, 1915, for $21,000, and said defendant became the custodian of said fiduciary funds. That in August, 1915, a block in San Antonio, known as block 20, C. B. 301, bounded on the east by Pecos street on the south by Monterrey street, known as the Pecos street property, was purchased by said defendant for the mother and said heirs with $14,000 of the proceeds of the sale of the said Laredo street property, and said defendant caused the legal title to said property to be conveyed to him without the knowledge of plaintiff, and he held the same in trust for all those interested therein. That said defendant expended of said trust funds, said rents and the remainder of said purchase money, about $10,000, in building five new houses on said property, and plaintiff, said defendant, and their mother then moved to, lived upon, and used said Pecos street property as tenants in common after the said purchase until the death of their mother, on or about the 12th day of April, 1922. That she died intestate. That an undivided five-sixth interest in said property by reason of the premises became a resulting trust in favor of plaintiff, defendant Sarah Del Valle, and their mother in 1915, and said four persons including Santos Leal, Jr., owned, held, and used said property as tenants in common until the death of said Joaquina G. Leal, as aforesaid. That the community interest of the mother in said property was inherited by said heirs.

"That said property rented for about $1,000 per month from January, 1916, until the death of plaintiff's mother, and said defendant collected said income from said property during said time, which amounted to about $60,000, after paying the living expenses of the said family and the taxes thereon; and during the last four years up to the present time said defendant has collected the income from said property, amounting to about $40,000 above said expenses.

"That from the year 1909 to 1925 said defendant purchased with said fiduciary funds, the rents and income from said Laredo and Pecos street properties, fifteen other lots and tracts of land in San Antonio. That defendant paid out of said fiduciary funds for said property amounting to about $30,000, and that plaintiff thereby, after the death of his mother, became the owner of an undivided one-third interest in all of said lots and land so purchased by said defendant.

"That there are a dozen or more houses on said property so purchased by said defendant, not including said Pecos street property, from which he has collected the rents of about $300 per month from the date the same was purchased.

"That in June, 1908, plaintiff borrowed $250 from one A. A. Gray, and as security therefor conveyed to said Gray the interest he inherited from his father in said Laredo street property, but thereafter his mother, for the benefit of plaintiff, in September, 1913, delivered to said defendant $350, and the latter paid said Gray said money for and at the instance of his mother, and said Gray for said consideration conveyed said interest to said defendant for the benefit of plaintiff, and thereby a resulting trust was created in said property for plaintiff, and

he again acquired the equitable and superior title to said interest in said Laredo street property, which he inherited, as aforesaid, from his father, and plaintiff, by reason of the premises, owned said interest in said Laredo street property, which was a resulting trust, when the same was sold as aforesaid in July, 1915.

"That upon the death of his mother, in accordance with said agreement, plaintiff demanded of defendant an accounting of all of the rents and income collected by him from said Laredo and Pecos street properties, as well as from all of said other properties from the year 1908, up to the present time, which exceeds $100.000, and also asked for a partition of all of said real estate, which now exceeds in value $100,000, but defendant failed and refused to render any accounting whatever of said rents, income, or profits from said property and refused to partition said property.

"Plaintiff prays that the defendant make a full and true discovery, disclosure, and accounting of all of said rents and funds concerning all the transactions and matters aforesaid, that plaintiff have judgment vesting in him the title to an undivided one-third interest in all of said property, both real and personal, and for a partition of said property, and for such other and further relief, legal and equitable, to which he may be entitled to."

[1] It is not apparent upon what theory the general demurrer was sustained. The insistance of appellees in their brief is:

."Appellant, in his fourth amended original petition, sought to recover a one-third undivided interest in the community estate of his father, Santos Leal, Sr., and his mother, Joaquina G. Leal, basing his claim upon heirship. Appellant's trial pleading nowhere alleges that no administration upon the estates of his deceased father and mother was necessary; there is no allegation of any fact or facts which could be construed to mean that no administration upon either of such estates was necessary."

Appellant, in his petition, alleged:

"That Santos Leal, Sr., and Joaquina G. Leal were husband and wife, and that E. R. Leal, Santos Leal, Jr., and Sarah Del Valle are children born of the marriage of said Santos Leal, Sr., and Joaquina G. Leal, and are the sole surviving heirs thereof.

"That Santos Leal, Sr., died intestate on or about the 17th day of February, A. D. 1903, that there was no administration upon his estate, and that said Joaquina G Leal died intestate on or about the 12th day of April, A. D. 1922, and that there has been no administration upon her estate."

This was a suit for discovery and for an accounting between the heirs, growing out of the alleged breach of trust relations and the conversion of property of an estate in which appellant had an interest as an heir. The bill so clearly stated a cause of action against a general demurrer, which for its purpose admits as true all the facts stated, that we shall not discuss any issue raised in the pleading other than to state appellant was entitled to a hearing on the same.

Hence the judgment of the court below is reversed and the cause remanded.

## On Motion for Rehearing.

[2] Appellees file their application for a rehearing in this case, and in their motion challenge the soundness of our conclusion and state their view as the converse of our holding. They say that "this is a suit by an heir to recover property and effects belonging to estates of deceased persons, and it is necessary to allege that no administration was at such time pending on such estates, and that no administration was necessary," and that appellant alleges in his trial pleading:

"That Santos Leal, Sr., died intestate on or about the 17th day of February, A. D. 1903, that there was no administration upon his estate, and that said Joaquina G. Leal died intestate on or about the 12th day of April, A. D. 1922, and that there has been no administration upon her estate."

And appellees further urge and insist that "there is no allegation in such pleading which could reasonably be construed to mean that there was no necessity of an administration upon the estates of either of appellant's ancestors," and cite the following cases: Lopez v. Calzado (Tex. Civ. App.) 281 S. W. 324; Richardson v. Vaughan, 86 Tex. 93, 23 S. W. 640; Ins. Co. v. Johnson (Tex. Civ. App.) 235 S. W. 650; Johnson v. Bank (Tex. Civ. App.) 242 S. W. 293; Freeman v. Klaerner (Tex. Civ. App.) 190 S. W. 543; Laas v. Seidel, 95 Tex. 442, 67 S. W. 1015.

In the very face of the motion they copy language of the petition specifically showing the required allegation, "that there was no administration upon his estate." Such a statement in the petition presupposes that there was no necessity for an administration. If there was no necessity for an administration, conversely none should be had. It is contended by appellees that the allegations must be made "no administration was had and none was necessary." But both allegations are not necessary; only one or the other. It must either be alleged that there was no administration, or that no administration was necessary.

The statute (article 3356) provides:

"*Administration not Granted.*—No administration upon any estate shall be granted unless there exists a necessity therefor, such necessity to be determined by the court hearing the application."

[3] Heirs inherit without the necessity of an administration. The authorities cited in the motion for rehearing do not support appellees' contention, but conversely do support our views.

This is not a suit to recover anything against the estate, and the estate was not sued, but this was a suit of one heir against others, in which no creditor was or could be interested. In the case cited by appellees (Richardson v. Vaughan, supra), Justice Gaines, one of the wisest and most learned of all, said:

"Since our statute casts the legal title of property belonging to the estate of deceased persons directly upon the heirs (subject, however, to the payment of debts), we think it might properly have been held, that after the lapse of a reasonable time without administration upon the estate, they should have the right to sue for the recovery of any chose in action or other property which had descended to them. But from an early day a different doctrine has been announced in the court, and it is now too late to depart from it. As a general rule, the holding has been, that the heirs cannot sue without alleging and proving that there is no administration upon the estate, and that there is no necessity for one.

"In Walker v. Abercrombie, 61 Tex. 69, an exception was recognized. There three years had elapsed since the death of the ancestor and no administration upon his estate had been applied for; the estate was alleged to be insolvent, and it appeared that the debt which was sought to be recovered was about to be barred by limitation. It would seem that where a suit is necessary to preserve the property, the right of the heirs to bring it ought to be maintained, especially where a considerable time has elapsed without administration. Creditors who have not seen proper to attempt the collection of their claims through the probate court are not likely to suffer any injury in such a case by permitting the heirs to sue."

Appellees call our special attention to the cases Laas v. Seidel, supra, and Freeman v. Klaerner, supra. The allegation that there was no administration upon the estate, as shown by the cited cases, was sufficient, and, if necessary, under that general allegation, proof could be offered that there was no necessity therefor. It is held in Webster v. Willis, 56 Tex. 468:

"The general rule is laid down in the case of Giddings v. Steele, 28 Tex. 748 [91 Am. Dec. 336], 'that the heirs cannot sue in their own right as heirs for property of the estate; the executor or administrator must sue.' There are exceptions to this rule, as when the administration has been closed, or when there are no debts against the estate and no administration; in these cases, the reason of the rule not applying, the heirs may sue.'"

In the opinion written for this court by its Chief Justice, in the case of Lopez v. Calzado, supra, it was held:

"There was no allegation or proof that there had been no administration, or that there was no necessity for administration, of the estate of the deceased. This allegation is absolutely essential in suits by or against an estate, and a failure to make such allegation and proof is fundamental error, and will necessitate a reversal of a judgment obtained under such pleadings."

[4] It will be observed that we hold the allegation is "essential" in suits by or against.

an estate and a failure to make such allegation and proof is fundamental error. Now, under the allegation that there was "no administration had upon the estate," it is presumed that the probate court passed upon the question as the statute provides (Van Grinderbeck v. Lewis [Tex. Civ. App.] 204 S. W. 1042) or left open to proof that there was no exception for it; taking it out of the class of fundamental error. A special exception would raise the question as to necessity in the pleading of alleging further that there was no necessity for an administration, because, in the light of the allegation that there was no administration, it inferentially must appear that there was no necessity for one. We unqualifiedly accept as the law what is said by Justice Brown in Laas v. Seidel, supra:

"A general demurrer has the effect to admit as true for that purpose all facts which are alleged in the pleading challenged, as well as all facts which may reasonably be inferred from the facts alleged. If a fact necessary to be proved to sustain a recovery on the part of the plaintiff be neither alleged in the petition, nor fairly inferable from facts alleged, a demurrer to the petition must be sustained."

When the allegation is that there was no administration on the estate, is it not "fairly inferable from facts alleged" that there was no necessity therefor?

The other allegations in the petition, as shown in our original opinion, and apparent on the face of the opinion, sufficiently show, not only directly but inferentially, that there was no necessity for any administration.

This was a suit between heirs for an accounting of money, years after the time in which an administration could have been had. Whether there had been or had not been an administration of the estate, this had no effect on their estate at this time.

It is the individual opinion of the writer that the petition is too long and prolix to be well understood, and it should be again written so as to be more lucid and in order.

It was error to sustain the general demurrer; an amendment perhaps would meet any special exceptions.

The motion is overruled.