### LEAL v. LEAL.　(No. 7962.)

Court of Civil Appeals of Texas. San Antonio.
March 14, 1928.

Rehearing Denied April 4, 1928.

1. **Deeds** ⬅⟶26—**Under statutes, no particular form is required to convey title to land (Rev. St. 1925, arts. 1293, 1297).**

Under Rev. St. 1925, arts. 1293, 1297, relating to conveyances, no particular form is required to convey title to land.

2. **Deeds** ⬅⟶121—**"Quitclaim deed," in contradistinction to conveyance of land, conveys only vendor's chance of title.**

A "quitclaim deed," in contradistinction to conveyance of land, conveys only vendor's chance of title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Quitclaim Deed.]

3. **Trial** ⬅⟶351(5)—**Requested special issues which were interrogations seeking answers to issues covered by court's special charges were without merit.**

Requested special issues which were mere interrogations seeking answers to issues covered by court's special charges *held* without merit.

4. **Deeds** ⬅⟶111—**Deed held conveyance of grantor's interest in father's estate and receipt for settlement with his mother.**

Legal effect of conveyance, stating in substance that grantor, in consideration for $2,000, bargained, sold, released, and forever quitclaimed unto grantee and acknowledged "same was for the 1st and 2d distribution of the following estate his heirs and assigns," all his right, title, and interest in and to certain tract of land, to have and to hold premises together with rights, privileges, and appurtenances unto grantee, his heirs and assigns forever, *held* to be conveyance of all interest which grantor had in his father's estate and receipt for settlement with his mother.

5. **Appeal and error** ⬅⟶1062(1)—**Submitting to jury question whether plaintiff, by written instrument, sold his expectancy in mother's estate to defendant held harmless.**

Submitting to jury question whether plaintiff, by written instrument, sold his expectancy in his mother's estate to defendant *held* not harmful, where legal effect of instrument was to convey plaintiff's interest in father's estate and a receipt for settlement with his mother, and jury answered question in affirmative.

Error from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by E. R. Leal against Santos Leal, Jr. Judgment for defendant, and plaintiff brings error. Affirmed.

Drew Pruitt, of San Antonio, for plaintiff in error.

George G. Clifton, J. H. Ragsdale, and J. T. Sluder, all of San Antonio, for defendant in error.

COBBS, J. Plaintiff in error sues defendant in error for an accounting and for damages. It is the same cause of action asserted in Leal v. Leal, 291 S. W. 340, once before this court. That case shows the nature of the suit, except that the pleading was amended in this case. It was designated plaintiff's fifth original petition, upon which this case proceeded to trial. The amended pleading does not materially change the original pleading nor the cause of action. Defendant in error answered by general demurrer, pleas of two, three, and five years' limitation, and general denial. For special answer alleged that he had acquired the interest of plaintiff, E. R. Leal, in the estate of Santos Leal, Sr., by having purchased the same of A. A. Gray, on October 20, 1909, who executed his general warranty deed conveying to him all of the

undivided interest of E. R. Leal in the estate of Santos Leal, Sr. On June 19, 1908, said E. R. Leal conveyed such interest to the said A. A. Gray.

Prior to February 5, 1918, Santos Leal purchased of the plaintiff, E. R. Leal, all his right, title, and interest in and to the estates of Santos Leal, Sr., and Joaquin Leal, and on that date said E. R. Leal made, executed, and delivered unto Santos Leal his certain release receipt and quitclaim, acknowledging the full and final payment of all sums due him out of the community estate of Santos Leal, Sr., and Joaquin Leal. That at her death the mother, Joaquin Leal, owned no estate, having divided it among her children; E. R. Leal having received his full share and interest therein.

By a verified supplemental pleading plaintiff denied the execution of the receipt, release, and quitclaim deed of date February 5, 1918, and alleged that the same was a forgery.

The case was submitted to the jury on three special issues, and they were answered in favor of defendant. The court thereupon entered judgment in favor of defendant in error.

Plaintiff in error presents an original brief containing 59 pages and a supplemental brief containing 14 pages.

This seems to be a fact case, but plaintiff in error in addition has presented a brief containing 31 assignments of error and 43 propositions based thereupon.

Plaintiff in error's first and second propositions complain substantially that the two issues were not proper because there was no evidence to show that Santos Leal purchased E. R. Leal's expectancy or interest in his mother's estate. That issue was properly submitted to the jury, and they found upon sufficient evidence in the affirmative. So it was a proper issue to submit to the jury, and their finding is supported by the evidence, and the propositions are overruled.

The third proposition challenges as error the submission of the third special issue to the jury, alleging it involved a question of law for construction alone by the court, claiming the deed "shows on its face that it is a quitclaim deed, free from doubt and uncertainty, and hence purely a question of law to be determined by the court as to the legal effect and meaning of said instrument, and what interest in said real estate was thereby conveyed to defendant." The proposition is not clear, What is meant here by "free from doubt and uncertainty?"

The deed under discussion is as follows:

"That I, Emilia R. Leal of the county of Bexar and state of Texas, for and in consideration of the sum of two thousand dollars, to me in hand paid by Santos Leal of the county of Bexar and state of Texas, the receipt of which is hereby acknowledged, do, by these presents, bargain, sell, release and forever quitclaim unto the said Santos Leal and also acknowledge the same was for the 1st and 2d distribution of the following estate his heirs and assigns, all my right, title and interest in and to that certain tract or parcel of land lying in the county of Bexar and state of Texas, described as follows, to wit:

"Lots Nos. 10, 11, 12, 14, 15 & 16, in block No. 20. N. C. B. No. 301.

"To have and to hold the said premises, together with all and singular the rights, privileges and appurtenances thereto in any manner belonging, unto the said Santos Leal his heirs and assigns forever, so that neither I the said Emilio Leal nor my heirs, nor any person or persons claiming under me shall, at any time hereafter, have, claim or demand any right or title to the aforesaid premises or appurtenances, or any part thereof.

"Witness my hand at San Antonio, this 5th day of February A. D. 1918."

[1] The issue was, no doubt, submitted to the jury in response to plaintiff in error's insistence that the title to the property did not pass thereunder. Under our statute (Rev. St. 1925, arts. 1293 and 1297), no particular form is required to convey title to land.

There is language in this conveyance that brings it within the purview of the case of Cook v. Smith, 107 Tex. 119, 174 S. W. 1094, 3 A. L. R. 940. The discussion by Mr. Justice Phillips, who writes the opinion, does not appeal to the writer clearly as to what constitutes a quitclaim deed conveying a chance of title in contradistinction to a conveyance of land itself. On that subject the writer prefers the views presented by Presiding Judge Acker, in Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850, as follows:

"Whether the conveyance be a quitclaim or not is dependent upon the intent of the parties to it as that intent appears from the language of the instrument itself. If the deed purports and is intended to convey only the right, title, and interest in the land, as distinguished from the land itself, it comes within the strict sense of a quitclaim deed and will not sustain the defense of innocent purchaser."

In regard to this latter case Mr. Justice Phillips says in Cook v. Smith, supra:

"It is proper that we should call attention to the manifest conflict between the holding in Garrett v. Christopher, that notwithstanding the other features of the instrument may be those peculiar to a quitclaim deed, the use of the term 'premises' in the habendum clause will enlarge the effect of the instrument into that of a deed, and the later decisions of the court in Threadgill v. Bickerstaff and Dunham v. Eastham; since in neither of those cases is it recognized that the mere use of that term in such connection has, of itself, any such force. Garrett v. Christopher is not referred to in either opinion, but it cannot be otherwise regarded than as distinctly qualified by the ruling announced in each of these later cases."

If this case does not overrule the opinion of Judge Acker in Garrett v. Christopher, su-

pra, as to what constitutes a quitclaim deed, it qualifies it somewhat.

[2] In regard to the proposition presented and urged by plaintiff in error, that the evidence showed the instrument was a quitclaim deed, which would not estop plaintiff from inheriting his mother's interest, is without merit and is overruled.

In the first place, the instrument conveyed the property absolutely, and there is nothing to show or warrant the claim that it was a "quitclaim and conveyed only the vendor's chance of title," which is the real and true meaning of a quitclaim deed, in contradistinction to a conveyance of land. Garrett v. Christopher, supra.

The seventh and eighth propositions do not seem very relevant, because the court submitted the controlling and essential issues to the jury in the three issues.

[3] The special issues requested by plaintiff in error, most of which seem mere interrogations seeking answers to issues covered by the court's special charges, are without merit.

The seventh, eighth, and ninth propositions involve, it is true, questions of law in perfect harmony with, but not adverse to, the court's ruling, and are overruled.

The tenth proposition, which desired the jury to find how many tenant houses were upon 13 lots known as the Laredo street property, was not material, since that issue was a fact already before the jury which it necessarily had to consider under the evidence permitted to go before them, which enabled them to find the verdict they did.

To the same effect are the eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, fortieth, forty-first, forty-second, forty-third.

It is inconceivable how a court is expected to submit so many collateral issues to a jury when the only real and substantial ones were already submitted.

Plaintiff in error urges that the most important question from his standpoint is one of law involving the doctrine of resulting trusts. That doctrine is so old and so well established that it need not be amplified or here discussed. Aside from that, plaintiff in error does not controvert the doctrine, but does not admit its applicability here. All the questions of fact involved in the case have been submitted to the jury by the three questions they were asked to answer. They found: (a) That Santos Leal purchased from Emilio Leal his expectancy in his mother's estate; (b) that the alleged instrument dated February 5, 1918, executed by Emilio Leal to Santos Leal, was not a forgery, as claimed by plaintiff in error; and (c) that by such instrument he sold his expectancy in his mother's estate to Santos Leal.

These findings cover all the issues of fact necessary to be found, and they are supported by the testimony.

It would have been no aid to the jury for the court to have submitted the many interrogatories (so-called issues), requested by plaintiff in error, for a finding by the jury.

We held in the prior presentation of this case, on the former appeal, that it presented a cause of action and should not have been dismissed upon the demurrer but heard upon the facts. A trial has now been had on that theory, and, of course, on such alleged facts jury questions were raised, and we do not think it proper to disturb the findings of the jury on those issues.

The evidence shows that some time before the death of Joaquin Leal, she had parted with her interest, and that at the time of her death she owned no estate. The deed of June 11, 1908, from E. R. Leal to A. A. Gray conveyed Emilio's interest in his deceased father's estate, which was acquired by defendant in error.

[4, 5] The legal effect of the conveyance of February 5, 1918, from E. R. Leal to Santos Leal was, as stated, a conveyance of all the interest which Emilio had in his father's estate, likewise a receipt for a settlement with his mother. Because of the language of the deed perhaps the court thought the recitals therein were ambiguous, so in the third issue submitted the question, "Did Emilio Leal by such instrument sell his expectancy in his mother's estate to Santos Leal?" and they answered this question in the affirmative.

We think the evidence supports the findings of the jury; at least, no harm was done by its submission. So after fully considering plaintiff in error's briefs, argument, assignments, and propositions, we find no error assigned that should cause a reversal of the judgment, and therefore the judgment of the trial court is affirmed.