THOMPSON et al. v. WAITS.

(Court of Civil Appeals of Texas. Austin. May 28, 1913. Rehearing Denied July 5, 1913.)

1. ADOPTION (§ 8*)—STATUTORY PROVISIONS—SUFFICIENCY OF DEED OF ADOPTION—"LEGAL HEIRS."

Under Rev. St. 1895, art. 1, providing that any person wishing to adopt another as his legal heir may do so by filing with the clerk of the county court a statement in writing, reciting that he adopts such person as his legal heir, and article 2, providing that such statement, signed and recorded, shall entitle the party so adopted to all the rights and privileges of a legal heir of the party adopting him, an instrument executed by a husband and wife having no children, reciting that they thereby adopted W. as their legal heir, thereby conferring upon him all the rights and privileges in law and equity appertaining to "this act of adoption," but that it was intended and was their purpose to make W. a coheir with their legal heirs, with the understanding that he was made an heir to $1,000 more of their property than the other legal heirs, that the property coming to him was to remain free from the possession or control of his natural father, and that upon his death it was to revert to their other legal heirs, was not effective as an adoption, since while the first clause alone showed an intention to adopt W. as provided by statute, the subsequent provisions that he should not have all their property to which he would have been entitled under the statute showed that it was not intended to adopt him to the extent provided in the statute, and such subsequent provisions could not be rejected for uncertainty, on the theory that no one is heir to the living, as the words "legal heirs" were evidently used as meaning those who would be entitled to the property under the laws of descent and distribution (citing Words and Phrases, vol. 5, pp. 4063–4064).

[Ed. Note.—For other cases, see Adoption, Cent. Dig. §§ 12–14; Dec. Dig. § 8.*]

2. CONTRACTS (§ 162*)—CONSTRUCTION—GIVING EFFECT TO ENTIRE INSTRUMENT.

In construing written instruments, effect must be given to every clause, if possible, and in determining whether apparently contradictory provisions can be harmonized, the entire instrument should be looked to in the light of the surrounding circumstances.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 744; Dec. Dig. § 162.*]

3. CONTRACTS (§ 162*)—CONSTRUCTION—GIVING EFFECT TO MAIN PURPOSE.

Where two purposes or intents may be inferred from the language of a written instrument, and the main purpose clearly appears, it will control, but this merely means that, where the language is susceptible of two meanings, that will be adopted which does not contradict the main purpose as evident on the face of the instrument.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 744; Dec. Dig. § 162.*]

4. CONTRACTS (§ 162*)—VALIDITY—INCONSISTENT PROVISIONS.

Where the language of a written instrument admits of but one meaning, and the different clauses are plainly contradictory, they mutually destroy each other and render the instrument void.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 744; Dec. Dig. § 162.*]

5. ADOPTION (§ 1*)—NATURE OF PROCEEDING.

Adoption is unknown to the common law, and is purely statutory.

[Ed. Note.—For other cases, see Adoption, Cent. Dig. § 15; Dec. Dig. § 1.*]

6. WILLS (§ 58*)—CONTRACTS TO DEVISE OR BEQUEATH—INVALID ACT OF ADOPTION.

An instrument, executed by a husband and wife, attempting to adopt a child as their legal heir, but failing to accomplish that purpose because it gave him a less interest in their property than an adopted child is entitled to under the statute, will be upheld as a contract to leave a portion of the property of the makers to such child.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. § 58.*]

7. WILLS (§ 67*)—CONTRACTS TO DEVISE OR BEQUEATH—ENFORCEMENT.

A contract by which parties agree to leave a portion of their property to another, upon compliance therewith by the beneficiary, is enforceable in equity.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 175–177; Dec. Dig. § 67.*]

8. WILLS (§ 59*)—CONTRACTS TO DEVISE OR BEQUEATH—CONSIDERATION.

The society and affections of a child and the services which it may render are a sufficient consideration to support a contract by persons attempting to adopt such child, but failing to accomplish such purpose to leave a portion of their property to such child.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 166; Dec. Dig. § 59.*]

9. WILLS (§ 63*)—CONTRACTS TO DEVISE OR BEQUEATH—CONSTRUCTION.

Under a written instrument executed by a husband and wife having no children, reciting that they thereby adopted W., conferring upon him all the rights and privileges appertaining to "this act of adoption," that it was intended to make him a coheir with their legal heirs, with the understanding that he was to be made an heir to $1,000 more of their property than their other legal heirs, that the property coming to him was to remain free from the possession or control of his natural father, and that upon his death it was to revert to the other legal heirs of such husband and wife, treated as a contract by the husband and wife to leave property to W., he was entitled to such amount of the property as he would have received if he had been a coheir with the other heirs, plus $1,000.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 171; Dec. Dig. § 63.*]

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Action by P. V. Thompson and others against J. M. J. Waits. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

Scott & Ross and Spivey, Bartlett & Carter, all of Waco, and Tom Connally, of Marlin, for appellants. O. L. Stribling, of Waco, for appellee.

## Findings of Fact.

JENKINS, J. Appellants brought suit to recover an interest in certain lands in Falls county, Tex., alleging that said lands were formerly owned by J. M. Jackson and wife, Eleanor Jackson; that J. M. Jackson died in 1898, leaving a will, which was duly probated, by which he bequeathed all of his property to his said wife; that Eleanor Jackson died intestate April 8, 1910, leaving surviving as her only heirs her brothers, P. V. and J. M. Thompson, four children of a deceased sister, and one grandchild of said sister, viz., appellee herein; that by reason of said facts appellants P. V. and J. M. Thompson were each entitled to one-third of said land; that the four children of said deceased sister and appellee were each entitled to one-fifteenth thereof. Appellants further alleged that appellee had taken exclusive possession of said land, and was claiming the same in fee simple, by virtue of the following instrument:

"The State of Texas, County of Falls. Know all men by these presents: That we, J. M. Jackson and wife, Eleanor Jackson, of said state and county, have by this instrument adopted J. M. Jackson Waits, the child of C. G. and Ella Waits, now of the age of five years (5) as our legal heir, hereby conferring upon him all the rights and privileges both in law and equity appertaining to this act of adoption. However, it is intended by this instrument, and is the purpose of the said J. M. Jackson and wife in adopting the said J. M. Jackson Waits to make him a coheir with their legal heirs, with the understanding that the said J. M. J. Waits is hereby made an heir to one thousand ($1,000) dollars more of our property than are the others and remainder of our legal heirs, and is hereby expressly provided that the property coming to the said J. M. J. Waits as our adopted heir is, in the case of the death of us, the said J. M. Jackson and wife, or the death of the said J. M. Jackson Waits to be and remain forever free from the possession or control of the said C. G. Waits, father of the said J. M. J. Waits and in the event of the death of said J. M. J. Waits after the death of ourselves, his property to revert to the other of our legal heirs. Witness our hands this 24th day of February, A. D. 1887. J. M. Jackson, Eleanor Jackson."

"The State of Texas, County of Falls. Before me, J. H. Freeman, a justice of the peace and ex officio notary public in and for Falls county, Texas, on this day personally appeared J. M. Jackson and Eleanor Jackson, wife of J. M. Jackson, personally known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed; and the same Eleanor Jackson, wife of the said J. M. Jackson, having been examined by me privily and apart from her husband, and having the same by me fully explained to her, she, the said Eleanor Jackson, acknowledged such instrument to me to be her act and deed, and she declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it. Given under my hand and seal of office, this 12th day of April, A. D. 1887. J. A. Freeman, Justice of the Peace and Ex Officio Notary Public, Falls County, Texas."

That no children were ever born to said J. M. and Eleanor Jackson, and that at the time of the execution of said instrument they had reached an age at which they did not expect any children to be born to them. Said instrument was recorded in the office of the county clerk of Falls county April 20, 1887. Appellees excepted to said petition upon the ground that said written instrument showed that appellee was the owner in fee simple and entitled to the possession of the land herein sued for. The court sustained this exception, and, appellants declining to amend, have brought this action of the trial court before us, on this appeal, for review.

## Opinion.

[1] 1. The law with reference to adoption, in so far as applicable to this case, is as follows (Acts 1849–50, c. 39; R. S. [1895] arts. 1, 2):

"Article 1.—How Heir Adopted.—Any person wishing to adopt another as his legal heir, may do so by filing in the office of the clerk of the county court of the county in which he may reside a statement in writing, by him signed and duly authenticated or acknowledged, as deeds are required to be, which statement shall recite in substance that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office.

"Art. 2.—Rights of Adopted Heir.—Such statement in writing, signed and authenticated or acknowledged, and recorded as aforesaid, shall entitle the party so adopted to all the rights and privileges, both in law and equity, of a legal heir of the party so adopting him; provided, however, that if the party adopting such heir have, at the time of such adoption, or shall thereafter have a child begotten in lawful wedlock, such adopted heir shall in no case inherit more than one-fourth of the estate of the party adopting him."

2. The contentions of appellee, as we gather from the brief and argument of his able counsel, are substantially as follows: (1) The first part of said instrument is a full compliance with our statute with reference to adoption; (2) the subsequent part of said instrument should not be construed as evidencing an intention contrary to the first part, for the reason that it is so vague and uncertain that the intention of the makers cannot be deduced therefrom; (3) looking to the whole instrument, it appears that the controlling purpose of the makers thereof was to adopt appellee, and to "confer upon him all the rights and privileges" provided for in our statute of adoption. These contentions have appealed to us with considerable force, and it is with much hesitancy that we have felt ourselves constrained to reject them.

3. If the appellee was adopted, as provided for in said statute, he is, under the facts of this case, the only heir of Eleanor Jackson, and the owner in fee simple of the land in controversy, the interest of J. M. Jackson in said land having been bequeathed to said Eleanor Jackson. If the first part of said instrument be alone looked to, it constitutes a full compliance with our statute as to adoption.

[2] 4. A primary rule of construction of a written instrument is that, if possible, effect must be given to every clause thereof. Hopkins v. Hopkins, 103 Tex. 15, 122 S. W. 16; Hancock v. Butler, 21 Tex. 806; Smith v. Brown, 66 Tex. 545, 1 S. W. 573; Moore v. Waco, 85 Tex. 206, 20 S. W. 61–63. Hence it is our duty not to reject the second clause of said instrument, if under a reasonable construction of the whole instrument both clauses can be given an effect that will harmonize the apparent contradictions. In order to determine whether or not this can be done, we must look to the entire instrument, in the light of the surrounding circumstances. Faulk v. Dashiell, 62 Tex. 642, 50 Am. Rep. 542; Hearne v. Gillett, 62 Tex. 26; Hunt v. White, 24 Tex. 652; McHugh v. Gallagher, 1 Tex. Civ. App. 201, 20 S. W. 1115.

[3] 5. Should the apparent contradictions in the second clause be rejected, for the reason that it is manifest that the leading purpose of the makers of said instrument was to adopt appellee as their legal heir, as provided for in our statute? If a contrary purpose is inferable from the second clause, does it appear that such purpose was subsidiary to the main purpose, and therefore should not be given effect? It is a rule of law that where two purposes or intents may be inferred from the language used in a written instrument, and the main purpose of such instrument clearly appears, such main purpose will control. Hancock v. Butler, supra; Parrish v. Mills, 102 S. W. 187, and authorities there cited.

6. But this rule means that where language is used which is susceptible of two meanings, that meaning will be adopted which does not contradict the main purpose of the instrument, as evident on its face. Thus in Hopkins v. Hopkins, supra, it was held that the word "heirs" was not to be given the technical meaning, as laid down by the rule in Shelley's Case; and so, in Simonton v. White, 93 Tex. 56, 53 S. W. 339, 77 Am. St. Rep. 824, the words "bodily heirs" were held not to mean "heirs" in the technical sense. See, also, McLain v. Garrison, 39 Tex. Civ. App. 431, 88 S. W. 488.

[4] 7. If the language used admits of but one meaning, and the different clauses of a written instrument are plainly contradictory, they mutually destroy each other and render the instrument void. We are not here dealing with the rule that in construing a deed preference should be given to the granting clause over the habendum clause.

8. What is the leading purpose of the instrument under consideration? Is it to make the appellee the adopted heir of the parties executing such instrument, as provided by statute? Such purpose is fairly, and in the absence of anything to the contrary, necessarily inferred from the language used in the first clause. That is to say, looking to the first clause alone, the inference is that the purpose and intent of the makers of the instrument was that the appellee should inherit, at their death *all* of their property; they having no children and no expectancy of children. But shall we say that such was their purpose and intent, when they expressly declare in the second clause that such was *not* their purpose or intent? Whatever uncertainty there may be as to what portion of their property appellee should have, it is certain from the language used in the second clause, which is added for the avowed purpose of explaining their purpose in executing said instrument, that it was their intention that appellee should *not* have *all* of their property. The inevitable deduction from this is that it was not the purpose or intent of J. M. and Eleanor Jackson to adopt appellee in the manner and to the extent provided in our statute.

[5] 9. Adoption is unknown to the common law. It is purely statutory, and as the alleged adoption was not in compliance with the statute, appellee was never adopted by the Jacksons, or either of them. Guffey v. Hooks, 47 Tex. Civ. App. 560, 106 S. W. 693; Jordan v. Abney, 97 Tex. 296, 78 S. W. 486; Sarazin v. U. R. Co., 153 Mo. 479, 55 S. W. 94; Taylor v. Deseve, 81 Tex. 250, 16 S. W. 1008; Furgeson v. Jones, 17 Or. 204, 20 Pac. 842, 3 L. R. A. 624, 11 Am. St. Rep. 808.

10. We cannot escape the conclusion that the instrument under consideration did not amount to the adoption of appellee, unless we reject the second clause thereof entirely. Should this be done for the reason that the second clause does not indicate who is to

share the property with appellee? The instrument declares such parties to be the "legal heirs" of J. M. and Eleanor Jackson. Appellee invokes the maxim that the living have no heirs. True, in the technical sense, and yet the first clause of the instrument, the one relied upon by appellee, declares that the makers of same adopt appellee as their "legal heir," and such is the language of the statute relied upon. The word "heirs" is very frequently used to designate those who will be entitled to property under the laws of descent and distribution, and this is evidently the sense in which it is used in the second clause of said instrument. Hanna v. Hanna, 10 Tex. Civ. App. 101, 30 S. W. 820; McFerrin v. Templeman, 102 Tex. 530, 120 S. W. 168; Eckford v. Knox, 67 Tex. 202, 2 S. W. 372; Words and Phrases, vol. 21, p. 411.

[6, 7] 11. We construe said instrument to be a contract to leave a portion of the property of the makers of the same to appellee upon their death, such portion to be determined by the number and relationship of the parties who otherwise would have inherited all of said property. Whether appellee will take a fee simple or only a life estate we are not called upon to decide, as the case is now presented to us. Such a contract, upon compliance by the beneficiary, is enforceable in equity. Jordan v. Abney, supra; Healey v. Simpson, 113 Mo. 340, 20 S. W. 883; Wright v. Wright, 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196; Kofka v. Rosicky, 41 Neb. 329, 59 N. W. 788, 25 L. R. A. 207, 43 Am. St. Rep. 685; Van Tine v. Van Tine (N. J.) 15 Atl. 249, 1 L. R. A. 155; Sharkey v. McDermott, 91 Mo. 647, 4 S. W. 107, 60 Am. Rep. 270; Chehak v. Battles, 133 Iowa, 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140; Burns v. Smith, 21 Mont. 251, 53 Pac. 742, 69 Am. St. Rep. 653.

[8] In Jordan v. Abney, supra, our Supreme Court said: "That a contract between two persons, upon a valuable consideration, that one will, at his death, leave property to the other is enforceable, where no statute is contravened, is held by an almost unbroken current of authority, English and American." The society and affections of the child and the services it may render is a sufficient consideration to support such a contract. Lynn v. Hockaday, 162 Mo. 111, 61 S. W. 887, 85 Am. St. Rep. 480. In some of the cases above cited the contract was made with the parents for the benefit of the child. In Wright v. Wright, supra, the child was eight years old, and had no parents when it was taken from an orphan asylum. The effect of the decision is that the contract was made with the child.

[9] We think this construction of the instrument under consideration is deducible from the language of the instrument, looking to its four corners, and seeking to give effect to every part thereof. The language in the first clause is not that all of the "rights and privileges, both in law and equity," appertaining to a *legal or statutory adoption* are conferred on appellee, but only such rights and privileges as appertain to "this act of adoption." These rights and privileges are specifically explained in the second clause to be to make him "a coheir with their legal heirs." While said instrument did not, for technical reasons, make him an heir at all, and while the makers of said instrument at that time did not have any "heirs," technically speaking, still, if the instrument be so construed that the appellee shall receive from the estate of J. M. and Eleanor Jackson the amount of property that he would have received, plus $1,000, if he had been a "coheir," with those who become the "legal heirs" of said parties at their death, the evident purpose of Mr. and Mrs. Jackson in executing said instrument will be carried into effect.

For the reasons above stated, the judgment of the trial court is reversed, and this cause is remanded for another trial.

Reversed and remanded.