Jean M. LARSON, Petitioner,

v.

COOK CONSULTANTS, INC., et al. Respondents.

No. C-3594

Supreme Court of Texas.

May 29, 1985.

Robert E. Luna, Dallas, for petitioner.

Chancellor, Wood and Martin, Edmund R. Wood, Haynes and Boone, William R.

Allensworth and Daniel E. Westbrook, Dallas, for respondents.

ROBERTSON, Justice.

Jean Larson purchased a house which was later found to be constructed partially on her neighbor's lot. Larson sued Stewart Title Guaranty Company for breach of its title insurance policy and Cook Consultants for negligence in surveying her property. The trial court granted Stewart Title's motion for instructed verdict, and based on a jury verdict, rendered judgment for Larson as against Cook Consultants. The court of appeals affirmed the trial court's judgment as to Stewart Title; and it reversed the trial court's judgment as to Cook Consultants, rendering judgment that Larson take nothing. 677 S.W.2d 718 (Tex. App.—Dallas 1984). We reverse the judgment of the court of appeals as to Cook Consultants and we affirm as to Stewart Title; we remand the cause against Cook to the court of appeals.

In 1970, the builder of Larson's home hired Cook to perform a completion survey that would locate all improvements on the lot. Cook's survey revealed that the house was within the lot lines; consequently the mortgage company approved Larson's loan and Larson purchased the property with title insurance from Stewart Title. Shortly after Larson moved in, a house was built on the neighboring lot; this house was subsequently purchased by Stephen and Joyce Bates.

In 1977, Mr. Bates began to suspect that the property lines were incorrect, and he hired Robert West to resurvey the lot. West's survey revealed that Larson's house extended onto Bates' lot by two and one-half feet at the front of the house and by six feet at the rear. Bates sued Larson, and the court ordered Larson to "remove all improvements encroaching upon [Bates'] property." Larson then hired a demolition company to tear down the entire house. Thereafter, this litigation ensued.

The jury found that Cook was grossly negligent in making his completion survey and awarded both actual and exemplary damages to Larson; and judgment was rendered on the verdict. However, the court of appeals reversed, holding that Larson's suit was barred by the statute of limitations. The court of appeals held that the evidence established, as a matter of law, that Larson had discovered the survey error more than two years prior to filing suit.

Larson filed suit on July 10, 1979. In answer to Special Issue No. 1, the jury found that Larson had no notice of the error in the completion survey prior to July 10, 1977. However, the court of appeals relied upon Bates' testimony that on June 6, 1977, he told Larson's daughter about the boundary problem.

Because the court of appeals was reviewing a "no evidence" point of error, it was required to consider only the evidence and inferences tending to support the jury finding and to disregard contrary evidence and inferences. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982). In connection with Special Issue No. 1, the jury received the following instruction:

> You are instructed that Jean Larson would have notice of the error in the survey at that time when she knew sufficient facts that would cause an ordinary and reasonable person to make further investigation and if such investigation would have discovered that the survey in question was in error.

Cook did not object to this instruction and no point of error was raised concerning it; therefore the court of appeals was also bound to review the evidence in light of this instruction. The question is whether there is some evidence to support the jury's answer to Special Issue No. 1 in light of the instruction as submitted. We hold that there is evidence to support the jury's answer. Although the court of appeals set forth the standard of review for a "no evidence" point, it failed to properly apply that standard; therefore the court of ap-

peals erred in reversing the trial court's judgment.

At the time Bates talked with Larson's daughter, he was mowing the yard behind Larson's house. Larson acknowledged that her daughter had told her of Bates' claim that it was his yard. However, in describing her state of mind after the incident, Larson further testified as follows:

I laughed. I thought it was hilarious. In fact, I said why don't you let him mow the rest of it? Totally meaningless to me.

The jury also heard testimony about other incidents which indicated a history of "bad blood" between the two neighbors. This additional evidence is such that the jury could reasonably find that, taken in context, Bates' confrontation with Larson's daughter did not give Larson notice of sufficient facts to cause a reasonable and ordinary person to make further investigation at that time.

There is also evidence that Larson made further investigation after receiving two letters from Bates' attorney. She called her mortgage company and obtained a copy of her survey. The survey she obtained was Cook's survey which showed her home to be properly placed. She called the Federal Housing Administration and Stewart Title Guaranty Company. As a result of her phone calls, a meeting was set up between Larson, Cook and representatives from Stewart Title. At this meeting, Cook did not admit that there was any error in his survey. From this evidence, the jury could reasonably conclude that Larson did make a reasonable investigation which nevertheless failed to disclose that Cook's survey was in error. Thus, within the instruction that the jury was required to follow, there were at least two grounds upon which the jury could find that Larson did not have notice of the survey error prior to July 10, 1977; and there is evidence on both grounds to support the jury's answer.

Therefore, on Larson's claim against Cook, we reverse the judgment of the court of appeals, and we remand to that court for a determination on Cook's remaining points of error. On Larson's claim against Stewart Title, we affirm the judgment of the court of appeals.

SPEARS, J., concurs and dissents in an opinion in which KILGARLIN, J., joins.

SPEARS, Justice, concurring and dissenting.

Although I concur in the court's judgment as to Cook Consultants, I respectfully dissent as to Stewart Title. I believe that Stewart Title is liable to Mrs. Larson under its policy of title insurance. Stewart Title stipulated that it was economically and physically impracticable to remove only a portion of the house. Stewart Title guaranteed Mrs. Larson "good and indefeasible title to the ... described land." "Land" is defined in Larson's policy of title insurance to include "improvements affixed thereto...." Mrs. Larson's house was an affixed improvement. Moreover, the premium charged for the policy was based on the value of the entire house and lot. Each side thought that the insurance covered the title to the whole house. Title to part of the house failed because half of the house was not on the lot. Stewart Title guaranteed good title to that house. "Good title" is title which is free from litigation and palpable defect and which may be transferred to another. *Black's Law Dictionary*, 1332 (Rev. 5th Ed.1979). Obviously, Mrs. Larson did not get "good title" to the house. Title problems with the house resulted in litigation, and since the house had to be destroyed it could not be conveyed.

The policy attempts to exclude from its coverage any "discrepancies, conflicts, or shortages in area or boundary lines, or any *encroachments*, or any *overlapping of improvements.*" (Emphasis added). The exclusion of encroachments and overlapping improvements conflicts with the intent and purpose to insure the house and lot. Exceptions in insurance policies are strictly construed against the insurer. *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977). Furthermore, when the language of an insurance con-

tract is subject to two or more reasonable interpretations, that construction which affords coverage is to be the one adopted. *Glover*, 545 S.W.2d at 761. Applying these well-established rules of construction, I would hold as a matter of law that this title insurance policy covered Mrs. Larson's loss. This construction effectuates the intention of the parties as reflected by the whole contract. *See Republic National Life Insurance Company v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963); *Dallas Title and Guaranty Company v. Valdes*, 445 S.W.2d 26, 28–30 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.); *see also Thompson v. Waits*, 159 S.W. 82, 84 (Tex.Civ.App.—Austin 1913, writ ref'd).

The parties thought that the house and lot were insured against title failures. The premium for the insurance was based on the value of the *whole house* and lot. Since title to half the house failed because it was not on the lot, Stewart Title should be liable for that failure. To allow Stewart Title to escape from any liability under this contract is unconscionable. In my opinion it is against public policy to allow title companies to blatantly attempt to renege on the public in such a manner. If title policies do not cover this type of loss, then the intended protection is illusory.

Under the contract, Stewart Title has limited its liability for partial failure to "the same ratio to the whole liability that the adverse interest claim or right established may bear to the whole land, such ratio to be based on respective values determinable as of the date of the policy." I interpret this to mean that Stewart Title is liable for the proportionate reduction in value of the land and improvements caused by partial failure of title in the ratio of the respective values the date the policy was issued. Under the policy the whole house and lot were valued at $15,850.00. Title to half the house failed. The remaining half of the house was worth nothing because it had to be torn down, and Stewart Title so stipulated. Therefore, the value of the remaining property after partial title failure is only the value of the land. I would hold Stewart Title liable for the face amount of the policy less the value of the land at the time the policy was issued plus attorney's fees. Stewart Title had a duty to defend Mrs. Larson, and stipulated that if liable under the policy it would owe $2,500.00 as reasonable attorney's fees incurred in the suit against her neighbor. I believe that Stewart Title is additionally liable for the attorney's fees incurred in prosecuting this suit.

KILGARLIN, J., joins in this concurring and dissenting opinion.