**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**George REMY, Jr., Appellee.**

**No. 2–86–112–CV.**

Court of Appeals of Texas, Fort Worth.

May 12, 1988.

Fillmore, Purtle, Spurgers & Lambert, and Glynn Purtle, Wichita Falls, for appellant.

Law Offices of Mick McBee, and L.L. "Mick" McBee, Jr., and Eric H. Faddis, Dallas, for appellee.

Before FARRIS, JOE SPURLOCK, II, and KELTNER, JJ.

## OPINION

KELTNER, Justice.

Texas Employers' Insurance Association (TEIA), brings this appeal from the trial court's judgment setting aside a worker's compensation compromise settlement agreement that the company entered into with George Remy, Jr. (Remy), an injured worker.

In answers to special issues, the jury found facts sufficient to allow rescission on theories of both constructive fraud and mutual mistake. The trial court entered judgment for rescission based on both theories. In the judgment, the trial court reflected that it partially granted a motion for judgment non obstante veredicto and disregarded the jury's finding that one of the treating physicians was an agent of TEIA, because there was no evidence to support that answer.

TEIA asserts that compromise settlement agreements may not be rescinded on the grounds of mutual mistake as a matter of law. On the other hand, Remy contends the trial court erred in granting TEIA's motion to disregard the jury's answer to special issue ten. We will not consider TEIA's claim regarding mutual mistake. Instead, we reverse that part of the trial court's judgment which disregarded the jury's answer to special issue ten and affirm judgment for rescission based on constructive fraud in Remy's favor.

Remy was injured when he fell from a scaffolding at his work place. He was initially taken to Wichita Falls General Hospital and released after x-rays were taken. Initially, Remy's complaints were of his low back. When his back condition continued to deteriorate, he approached

TEIA, his employer's worker's compensation carrier, for permission to see another physician.

Remy selected Dr. Robert Pace, Jr., an orthopedic surgeon in Wichita Falls. A TEIA adjuster gave Remy a slip authorizing Dr. Pace to examine Remy and report his condition back to the insurance company. The slip did not specifically authorize Pace to treat Remy's condition.

Despite the language on the slip, Dr. Pace did treat Remy over a period of six months. During the period of treatment, Remy's objective and subjective symptoms worsened. A myelogram and CAT scan were performed. While the myelogram was negative, Dr. Pace diagnosed two bulging disks in Remy's low back. Dr. Pace's records were sent both to TEIA and to Remy's attorney. During the period of treatment, TEIA paid weekly benefits under the worker's compensation act. Nonetheless, settlement negotiations continued between Remy's attorney and TEIA. Immediately prior to a pre-hearing conference, TEIA requested a "special report" from Dr. Pace. Dr. Pace's report reflected that Remy did not need surgery as of the day of the report. However, Dr. Pace reiterated that, at the worse, Remy could have two bulging disks in his low back.

As a result, both parties agreed to a settlement on the assumption that Remy had sustained a typical low back strain with only a possibility of future low back surgery. Based on this assumption, the parties agreed to a contingent escrow amount, if Remy eventually required low back surgery.

Unfortunately, Remy's condition rapidly deteriorated after the settlement. Six months later, Remy's condition had digressed to a point that he was a virtual quadriplegic. Eventually, he was hospitalized for an operation on the spinal cord in his neck.

At trial, one physician testified and the reports of three others were admitted into evidence. In their opinion, the neurological loss which caused Remy's quadriplegia was caused by damage to the spinal cord in the neck. It was the opinion of these same doctors that the damage to the spinal cord was caused by the on-the-job injury. Specifically, Dr. Herbert Leiman testified that Dr. Pace had misdiagnosed Remy's condition. However, Dr. Leiman further testified that he could not fault Dr. Pace because only the progression of Remy's problem would have led to the correct diagnosis. In fact, late in his treatment, Dr. Pace had requested a neurological consultation because of Remy's progressive weakness and spasticity after the settlement. After undergoing extensive neck surgery, Remy brought suit to set aside the compromise settlement agreement and sought findings that he was totally and permanently disabled as a result of his on-the-job injury.

In answer to special issues, the jury found (1) that Remy was totally and permanently disabled as a result of the injury; (2) both parties entered into the settlement agreement based on representations made by Dr. Pace; (3) the representations by Dr. Pace were false; (4) Remy relied on the representations and would not have entered into the compromise settlement agreement absent the representations; (5) a mutual mistake of material fact was made at the time the compromise settlement agreement was executed because of the representations of Dr. Pace; and (6) Dr. Pace was acting on behalf of TEIA when he made the incorrect representations regarding Remy's injury.

Both Remy and TEIA appeal from the trial court's judgment. TEIA contends that compromise settlement agreements may not be set aside for mutual mistake as a matter of law. However, we do not reach that contention because we find the court erred in granting the motion to disregard the jury's answer that Dr. Pace was acting on behalf of TEIA when making the representations. As a result, Remy was entitled to a judgment of rescission based on constructive fraud.

■ A compromise settlement agreement may be set aside for constructive fraud upon a showing of: (1) misrepresentations made to the worker about his or her injuries; (2) made by the employer, worker's compensation carrier or an agent of

either; (3) reliance by the worker on the misrepresentations; and (4) a meritorious claim for more compensation than was paid. *Rodriguez v. American Home Assur. Co.,* 735 S.W.2d 241, 242 (Tex.1987).

■ All of these elements were found by the jury. However, the jury's finding that Dr. Pace was acting on behalf of TEIA when making the representations was set aside because of the trial court's opinion that there was no evidence to support the finding. Remy attacks this part of the judgment.

The issue of the character and nature of evidence to support a finding that a doctor was an agent of an insurance carrier was recently decided by the Texas Supreme Court. *Rodriguez,* 735 S.W.2d at 242. In that case, the supreme court noted that there are several ways in which a doctor may be proved to be an agent of an insurance carrier, stating:

> There are several ways for a doctor to become a carrier or employer's agent. One way for an agency relationship to come about is if the carrier or employer recommends the physician.
>
> . . . .
>
> *Another way that a physician can become an agent, however, is if the doctor's reports are used by the carrier or employer in reaching the settlement.*

*Id.* at 242 (emphasis added).

The *Rodriguez* case was cited after the judgment in the instant case was rendered. As a result, the trial court did not have the benefit of the supreme court's analysis. However, in applying the law in *Rodriguez* to the facts in this case, it is obvious that there is ample evidence to support the jury's finding that Dr. Pace was acting on behalf of TEIA when he made the representations. For example, Joe Glen Eager, pre-hearing coordinator for TEIA, testified that he conducted the pre-hearing conferences before the industrial accident board for TEIA. He testified that he relied on Dr. Pace's reports in entering the settlement agreement. Other TEIA personnel testified that they relied on Dr. Pace's representations and believed that Remy had only sustained a typical back strain injury with only a slight possibility of eventual low back surgery. Additionally, there was testimony that TEIA requested a "special report" immediately before the pre-hearing conference.

Based on this evidence and the law set forth in *Rodriguez,* the jury was entitled to find that TEIA made Dr. Pace their agent by utilizing his reports in reaching the compromise settlement agreement.

■ In its first three points of error, TEIA attacks the jury's answer to special issue seven. In that issue, the jury found that the representations made by Dr. Pace were "incorrect, notwithstanding that he made them in good faith and believed them to be true." TEIA attacks this finding on the grounds of no evidence, insufficient evidence, and that the finding is against the great weight and preponderance of the evidence.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex. 1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In re King's Estate,* 244 S.W.2d at 661–62.

A "no evidence" point of error must and may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 288 (Tex.App.—Forth Worth 1984, writ ref'd n.r.e.); Calvert, *"No Evidence" and "Insufficient Evidence"*

*Points of Error*, 38 TEXAS L. REV. 361 (1960).

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

TEIA's point of error claiming that the jury's finding is against the great weight and preponderance of the evidence so as to be manifestly unjust is mischaracterized. Remy had the burden of proof on this special issue. As a result, the proper point of error is that there is insufficient evidence to support the jury's answer. The "great weight and preponderance" point of error is appropriate only when the party with the burden of proof on the issue complains of the jury's findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983); Calvert, *"No Evidence"* and *"Insufficient Evidence" Points of Error*, 38 TEXAS L. REV. 361 (1960). However, this mischaracterization is not fatal to the point on appeal. The supreme court has wisely relaxed the former rigorous requirements of the wording of points of error. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 632–33 (Tex.1986). As a result, we will consider the "great weight and preponderance" point of error as a claim of insufficient evidence to support the verdict.

We find there is ample evidence to support the jury's findings that the representations made by Dr. Pace were incorrect.

Specifically, Dr. Leiman testified that Dr. Pace's diagnosis of a low back injury was incorrect. Dr. Leiman testified that Remy's quadriplegia was caused by damage to the cervical spinal cord suffered in his on-the-job fall. Three other doctors concurred in this opinion. This testimony alone is sufficient to overcome TEIA's no evidence complaint.

However, when we address claims of insufficient evidence, we must view all evidence relating to the jury's finding. TEIA points out that Dr. Leiman does not fault Dr. Pace's handling of the plaintiff's case. On the other hand, Dr. Leiman did testify that Dr. Pace's diagnosis was incorrect. The issue of whether Dr. Pace competently handled his patient is not an issue in this case. Instead, the issue submitted to the jury simply asks whether the representations made by Dr. Pace were correct. There is strong evidence in the record to indicate that the representations were not correct. As a result, we overrule TEIA's first three points of error.

We reverse that part of the judgment which disregards the jury's answer to special issue ten and affirm the judgment of the trial court based on constructive fraud.