Samuel GARCIA, Appellant,

v.

Mirosalva MARTINEZ, et al., Appellees.

No. 13–96–075–CV.

Court of Appeals of Texas,
Corpus Christi.

June 26, 1997.

Rehearing Overruled Sept. 11, 1997.

Publication Ordered April 1, 1999.

Ronald G. Hole, Micaela Alvarez, Law Offices of Ronald G. Hole, Attorneys at Law, McAllen, for Appellant.

Keith C. Livesay, Livesay & Cowen, Pharr, Francisco J. Rodriguez, Rodriguez, Prunedo, Tovar, Enriquez & Calvillo, McAllen, for Appellee.

Before Justices DORSEY, HINOJOSA and CHAVEZ.

## OPINION

Opinion by Justice DORSEY.

This is an appeal from an order awarding attorneys fees to a guardian *ad litem*. After a hearing to determine the amount of *ad litem* fees, the trial court ordered that the *ad litem*, Francisco Rodriguez, have a judgment against Samuel Garcia, M.D. for his portion of the *ad litem* fees and for all court costs. The court also awarded appellate attorneys fees. Dr. Garcia appeals by six points of error. Rodriguez raises one cross-point of error. We affirm.

## Procedural History

Mirosalva Martinez, on her behalf and as next friend for Abraham Martinez (her son) and Juan Andres Martinez (her husband), asserted a medical-negligence claim against Universal Health Services of McAllen, Inc. d/b/a McAllen Medical Center, McAllen Medical Center, Inc., and Samuel Garcia, M.D. Mirosalva alleged that she gave birth to Abraham at McAllen Medical Center (MMC). He was born with several serious birth defects and was delivered by Dr. Garcia.

On February 19, 1993, the defendants filed a motion for the appointment of a guardian *ad litem*. They requested the court to appoint an *ad litem* to represent and protect the best interests of Abraham Martinez, the minor. That same day, the court appointed

attorney Francisco Rodriguez as the *ad litem*.

On April 23, 1993, the parties entered into an Agreed Final Judgment in which the court ordered the defendants to pay the plaintiffs $1,200,000 as follows: (1) $200,000 into the court's registry for the use and benefit of Abraham Martinez; and (2) $1,000,000 to Mirosalva and Juan Andres Martinez, individually and as next friends of Abraham, and to their attorney, George Powell. The court ordered the defendants to pay all court costs *pro rata*, including $75,000 set as attorneys fees for the *ad litem*. The evidence showed that Dr. Garcia paid $100,-000 of the judgment and that MMC paid the remaining $1.1 million. At some point, Rodriguez had received $24,000 [1] in *ad litem* fees from MMC's portion of the settlement.

On June 27, 1995, the trial court held an evidentiary hearing pursuant to our mandate to determine the issue of appropriate *ad litem* fees.[2] Francisco Rodriguez, Keith Livesay, and Ronald Hole testified at this hearing.

Rodriguez testified that he received his law license in November 1979 and that he had practiced law since that time. His main practice was in personal injury law. He and Mr. Pruneda [3] spent approximately 60 to 75 hours of work on this case. His opinion was that a reasonable *ad litem* fee would fall

---

1. During the evidentiary hearing, Dr. Garcia's counsel asked Rodriguez, "And, how much have you already received in this case as *ad litem* fees?" He responded, "I don't know if it was— either twenty-five—twenty-four thousand or thirty thousand, something like that. I think it was only twenty-four thousand bucks. And, that was from the McAllen Medical Center's portion from their 1.1 million."

2. *See Garcia v. Martinez*, 894 S.W.2d 806 (Tex. App.—Corpus Christi 1994, no writ). In this case, the trial court held a hearing in which it approved the terms of the agreed judgment. The court asked the parties whether they had resolved the fee for the guardian *ad litem*. Appellant's counsel responded that they had not had a chance to discuss it and requested to pass the issue. Subsequently, before the parties reached any agreement on the *ad litem* fee, the court filled in the blank on the agreed judgment which was reserved for the amount of the *ad litem* fee. The court entered the amount of $75,000. Appellant argued on appeal that the court abused

its discretion in awarding the guardian *ad litem* $75,000 in fees, because no evidence existed to support a finding that the award was reasonable. We stated that the court erred in arbitrarily filling in the amount of $75,000 for the guardian *ad litem* fee and in not conducting an evidentiary hearing. The trial court's action in resolving the issue without a hearing was an abuse of discretion. Since no evidence supported the finding of the $75,000, the trial court must hold an evidentiary hearing concerning the time and effort expended by the guardian *ad litem*. Because the record did not show that the trial court gave appellant an opportunity for a hearing as he requested, we concluded that the trial court overlooked the request in the record. Therefore, we reversed and remanded the case for an evidentiary hearing so that the trial court could determine the issue of the guardian *ad litem's* fee.

3. Documentation in the transcript showed that a member of Francisco Rodriguez's law firm had the surname of Pruneda.

between $10,000 and $15,000. His testimony showed that this fee would come from Dr. Garcia only. It was not for the whole case. He indicated that $250 to $300 per hour was a reasonable hourly rate for an attorney with his experience.

Keith Livesay, an attorney board certified in civil appellate law, testified about the attorneys fees required to appeal this case. In his opinion, an appeal to the court of appeals would take between 75 and 100 hours of work, and a reasonable fee would amount to $165 per hour. His testimony showed that an appeal of this case to the court of appeals would cost $15,000, that filing an application for writ of error to the Texas Supreme Court would cost $5,000, and that if the court granted a writ of error, another $5,000 would cover that cost.

Ronald Hole, Dr. Garcia's counsel, testified that he received his law license in 1980. He was board certified in personal injury law and civil trial law. He had practiced in the Rio Grande Valley since 1984 in the personal injury field. He said that reviewing the court's file, seeing what the *ad litem* did in the case, and attending all the hearings and the depositions, he believed that a reasonable fee would have encompassed about 20 to 30 hours. He said that $120 per hour was a reasonable attorneys fee for that same amount of time. This would equal an *ad litem* fee of $3,600. He said that $3,000 to $5,000 was a reasonable fee for appealing the case to the court of appeals. An additional $3,000 would cover the cost to appeal it to the supreme court. If the supreme court granted a writ, another $3,000 would cover that cost. He said that a reasonable hourly fee "in this area" was $120 per hour. He admitted that the highest hourly rate that he had ever charged was $150 per hour.

After hearing the evidence, the trial court signed an Order Awarding Guardian *Ad Litem* Fees [4] in which it awarded $15,000 *ad litem* fees to Rodriguez for the trial of the case, and it awarded appellate attorneys fees conditional on appeal. The court stated in this order that a portion of the *ad litem* fees had previously been resolved with counsel for the remaining defendants. The court recog-

nized that the Agreed Final Judgment showed that Dr. Garcia was responsible for ½₂ of the court costs.

On August 31, 1995, Dr. Garcia filed a Motion to Clarify the Order Awarding Guardian *Ad Litem* Fees (Motion to Clarify). He complained that the trial court's order was confusing because certain provisions of the order were struck out, leaving the interpretation of the order ambiguous. The order awarded $15,000 as *ad litem* fees for trial of the case. However, since Dr. Garcia was only responsible for ½₂ of the court costs, he had a liability of $1,250 for the *ad litem* fees. Since the court struck out that particular language of the order, some confusion existed about the court's intent.

On September 12, 1995, the trial court signed an Order Granting Attorney *Ad Litem's* Fees in which it ordered that Rodriguez "have judgment against Samuel Garcia in the amount of $15,000, for the remaining ad litem fees, and for all costs of court. . . ." The court also awarded appellate attorneys fees conditional on appeal.

On September 19, 1995, Dr. Garcia filed a Motion for New Trial and/or to Modify, Correct, or Reform the Judgment. He contended that the trial court erred in awarding *ad litem* fees in the amount of $180,000 and in the amount of $15,000. He requested the court to modify, correct, or reform its "Order Awarding Guardian Ad Litem Fees" to show that he was only responsible for $1,250 (1/12 of $15,000) in *ad litem* fees.

On October 5, 1995, the trial court held a hearing on the Motion To Clarify. It ordered that Dr. Garcia pay $15,000 in *ad litem* fees. The trial court signed an Order Clarifying Award Of Attorney *Ad Litem's* Fees (Order of Clarification) in which it ordered that Rodriguez "have judgment against Samuel Garcia in the amount of $15,000, for said Defendant's portion of ad litem fees, and for all costs of court. . . ." It also awarded appellate attorneys fees conditional on appeal. The court stated in this order that Dr. Garcia was incorrect when he claimed that it awarded $180,000 in *ad litem* fees.

4. The trial court signed this order on August 24, 1995.

Dr. Garcia appeals from the Order of Clarification.

*Analysis*

■ By point three, Dr. Garcia challenges the legal and factual sufficiency of the evidence to support the $15,000 award of *ad litem* fees. In determining a "no evidence" point, we consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If any evidence of probative force exists to support the finding, we must overrule the point and uphold the finding. *In re King's Estate*, 244 S.W.2d at 661–62.

In reviewing a factual sufficiency point, we must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). A court may overturn findings only if they are so against the great weight and preponderance of the evidence that they are clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). In *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986), the court said that a court of appeals must also "clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust." *Pool*, 715 S.W.2d at 635.

Rule 173, Texas Rules of Civil Procedure, authorizes the court to award an *ad litem* a reasonable fee for his or her services. The amount of compensation awarded to the ad litem lies within the trial court's sound discretion. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 794 (Tex.1987). A reviewing court will not overturn a fee award absent evidence showing a clear abuse of discretion. *Brownsville-Valley Regional Medical Ctr., Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex.1995).

Section 1.04, Texas Disciplinary Rules of Professional Conduct,[5] lists eight factors that a court must consider in determining the reasonableness of attorneys fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 40 Tex. Sup.Ct. J. 591 (1997). The first factor is the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly. Rodriguez testified that he had practiced law since 1979 in the personal injury field. He and Mr. Pruneda spent around 60 to 75 hours on this case. Rodriguez reviewed plaintiffs' counsels' files on the case, and he discussed the case with them. These events took at least four hours. He spent two hours reviewing the court's file. He spent 10 to 15 hours in settlement negotiations and discussions with defense counsel, Joe Garcia. He spent less than an hour at the friendly suit hearing. He also reviewed the settlement documents and visited the Martinez family. Pruneda attended a deposition in Boston to depose one of the experts. That required over two days. Rodriguez's testimony showed that a reasonable hourly rate amounted to $250 to $300 per hour. He said that based on the circumstances of the case, the amount of time that he spent, and other factors, a reasonable *ad litem* fee would fall between $10,000 and $15,000. This was the amount that he was demanding from Dr. Garcia only. Rodriguez's testimony was that, to him, every medical malpractice case starts out as complex.

The second factor is the likelihood that the acceptance of the particular employment will preclude other employment for the lawyer. Rodriguez could not say for certain that his work on this case precluded other employment.

The third factor is the fee customarily charged in the locality for similar legal services. The evidence did not give the customary fee for performing this type of legal work. However, Rodriguez's testimony showed that he had practiced law since 1979 in the personal injury field and that $250 to $300 per hour was a reasonable hourly rate.

The fourth factor is the amount involved and the results obtained. Rodriguez's testi-

---

5. Reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (State Bar Rules, art. X, § 9).

mony showed that he represented the minor's best interest, which included trying to start the settlement negotiations. When he entered the case, settlement negotiations were at a standstill. He initiated settlement negotiations with attorney Joe Garcia which ultimately led to a settlement. He also had to recommend to the court whether the settlement was in the minor's best interest. He was able to obtain a $200,000 settlement for his client.

The fifth factor is the time limitations imposed by the client or by the circumstances. The evidence did not show that the client or the circumstances imposed any time limitations.

The sixth factor is the nature and length of the professional relationship with the client. The trial court appointed Rodriguez as the *ad litem* on February 19, 1993, and it signed the Agreed Final Judgment on April 23, 1993. Thus, Rodriguez's relationship with the client existed over two months. In this short period, however, he initiated settlement negotiations and received a $200,000 settlement for his client.

The seventh factor is the experience, reputation, and ability of the lawyer or lawyers performing the services. Rodriguez had about 14 years of experience in the personal injury field at the time he received the appointment. He had previously represented a client in a medical-negligence case.

The eighth factor is whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. In this case, Rodriguez based his fee on an hourly basis. He said that Dr. Garcia had not paid him, and he was not sure that he would ever receive payment. He indicated that Dr. Garcia might file for bankruptcy. He had a previous case in which he did not receive payment.

After considering and weighing all the evidence in the record, we conclude that sufficient evidence exists to support the $15,000 award of *ad litem* fees. We hold that the trial court did not abuse its discretion by awarding $15,000 in *ad litem* fees to Rodriguez. We overrule point three.

By point two, Dr. Garcia asserts that the trial court abused its discretion when it awarded Rodriguez $180,000 in *ad litem* fees because no evidence or insufficient evidence exists to support this award. After the parties rested at the evidentiary hearing, the trial court awarded Rodriguez $15,000 as an *ad litem* fee for the trial of this case. The Order of Clarification stated that Dr. Garcia was incorrect when he claimed that it awarded $180,000 in *ad litem* fees. In that order, the trial court awarded Rodriguez $15,000 in *ad litem* fees. We hold that the trial court did not award $180,000 in *ad litem* fees. We overrule point two.

By point four, Dr. Garcia asserts that the trial court abused its discretion in awarding all costs against him because the Agreed Final Judgment provided that he was responsible for ½ of the court costs. By point five, he asserts that the trial court erred in entering a judgment of *ad litem* fees against him instead of taxing the fees as costs. Rule 173, Texas Rules of Civil Procedure, provides that when a minor is a party to a suit and the court determines that the appointment of a guardian *ad litem* is necessary, the court shall allow the guardian *ad litem* a reasonable fee for his or her services which is taxed as a part of the costs. Our rules further provide that the successful party to a suit shall recover from his adversary all costs incurred therein. TEX.R. CIV. P. 131.

The assessment of costs is within the trial court's discretion. *San Antonio Housing Auth. v. Underwood*, 782 S.W.2d 25, 27 (Tex.App.—San Antonio 1989, no writ); *Clark v. McFerrin*, 760 S.W.2d 822, 828 (Tex. App.—Corpus Christi 1988, writ denied); *Hill v. Robinson*, 592 S.W.2d 376, 385 (Tex. Civ.App.—Tyler 1979, writ ref'd n.r.e.). Even if the trial court abused its discretion, Dr. Garcia did not call the attention of the trial court to the matter by motion to retax the cost or in any other manner. Before a party can complain on appeal about the trial court taxing the costs against it, the party must show that it objected or made a motion to retax the costs in the trial court. *Hill*, 592 S.W.2d at 385. Dr. Garcia, having failed to call the matter to the attention of the trial court, may not raise this question for the

first time on appeal. TEX.R.APP. P. 52(a); *Hill,* 592 S.W.2d at 385. We overrule points four and five.

■ By point six, Dr. Garcia asserts that the trial court erred in awarding appellate attorneys fees because it did not make the fees conditional upon a successful appeal. By his sole cross point, Rodriguez asserts that he is entitled to his appellate attorneys fees. This court has held that a trial court errs when it penalizes a party for taking a successful appeal by taxing attorneys fees which are not conditionally awarded. *Rio Grande Valley Gas Co. v. Lopez,* 907 S.W.2d 622, 626 (Tex.App.—Corpus Christi 1995, no writ); *see also Brown & Root U.S.A., Inc. v. Trevino,* 802 S.W.2d 13, 16 (Tex.App.—El Paso 1990, no writ); *King Optical v. Automatic Data Processing of Dallas, Inc.,* 542 S.W.2d 213, 218 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.).

The award of *ad litem* fees for appeal in this case was not conditioned upon whether Rodriguez succeeded in his appeal. However, Dr. Garcia did not object to this problem. Accordingly, he has not preserved this complaint for appellate review. *See* TEX.R.APP. P. 52(a). We overrule point six and sustain the cross-point of error.

■ By point one, Dr. Garcia asserts that the trial court erred by failing to file findings of fact and conclusions of law. Dr. Garcia timely filed his Request for Findings of Fact and Conclusions of Law and his Notice of Past Due Findings of Fact and Conclusions of Law. The trial court signed its Findings of Fact and Conclusions of Law on Attorney *Ad Litem's* Fees on February 6, 1996. The findings and conclusion were due on December 3, 1995. *See* TEX.R. CIV. P. 297. On appeal, Dr. Garcia argues that due to the court's failure to timely enter findings of fact and conclusions of law, he was effectively denied his right to address, brief, and argue against the trial court's findings and conclusions. Additionally, he was denied the opportunity to object to the court's findings and conclusions and to request additional findings.

■ In *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768 (Tex.1989), the supreme court stated that the trial court's duty to file findings and conclusions is mandatory. The trial court's failure to respond when the requesting party has properly made all requests is presumed harmful unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury. *Cherne,* 763 S.W.2d at 772. *See Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984).

In *Sheldon Pollack Corp. v. Pioneer Concrete of Texas, Inc.,* 765 S.W.2d 843 (Tex.App.—Dallas 1989, writ denied), the court stated that the test for determining whether a complaining party has suffered harm due to the court's failure to file findings is:

> Whether the circumstances of the particular case would require an appellant to have to guess the reason or reasons that the trial judge has ruled against it. In factually complicated situations in which there are two or more possible grounds for recovery or defense, an undue burden would be placed upon an appellant.

*Sheldon Pollack,* 765 S.W.2d at 845; *see also Fraser v. Goldberg,* 552 S.W.2d 592, 594 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

We originally remanded this case for an evidentiary hearing to determine one issue; that is, the amount of guardian *ad litem* fees. The circumstances of this case do not require Dr. Garcia to guess the reason that the trial court awarded *ad litem* fees. We hold that the trial court did not err by failing to file its findings of fact and conclusions of law. We overrule point one.

We AFFIRM the trial court's judgment.